# Wheeling.

## DELAPLAIN & SON *v.* WILKINSON & CO. *et als.*

Decided November 27, 1880.

*1880
Special Term.*

*Delaplain & Son
v.
Wilkinson & Co.
et al.*

1. On December 23, 1868, J. N. W. (the owner) by contract sold a part of a lot of land containing two acres, situate at or near the town of Bridgeport, in Harrison county, to E. B. H., and at the time the contract was committed to writing and signed by said J. N. W. and delivered to said E. B. H., and he was then put in possession of the property purchased; and afterwards, on the 2d day of April, 1869, the said J. N. W. by contract sold the residue of said lot of land to said E. B. H., and at that time the last named contract of sale was committed to writing and signed by said J. N. W. and delivered to said E. B. H., and he was then put in possession of the land last so purchased by him. Said E. B. H., soon after he was so put in possession, made valuable and permanent improvements thereon, and in September, 1871, the said E. B. H. by verbal contract sold said lot of land to W. P. G., a brother of G. W. G., and G. W. G. paid said J. N. W. the balance of purchase-money due to him on the whole of said lot, and the said W. P. G. and G. W. G. together paid said E. B. H. the purchase-money due him on the said lot from said W. P. G. The said E. B. H. continued in possession of said lot until some time in September, 1871, when by verbal contract only, he sold the whole of said lot of land to the said W. P. G., who was immediately put in possession of the same, and continued in the possession thereof until some time in August, 1872, when by verbal contract only he sold the same to his said brother G. W. G., who was then and there put in possession of said lot of land under said verbal contract, and he and those claiming under him continued in such possession from thence hitherto. Said G. W. G. and those claiming under him after his said purchase and before the rendition of the judgments hereinafter men-

tioned made valuable permanent improvements thereon. Said E. B. H. received his said purchase-money long before the date of said judgments as well also the said W. P. G. In September, 1871, about the time said E. B. H. made said verbal contract of sale to said W. P. G., he verbally directed the said J. N. W. to make the deed for the said lot of land to said W. P. G ; the said J. N. W. did accordingly afterwards on the 19th day of September, 1871, make and deliver to the said W. P. G. a deed for said land duly acknowledged for record, to which the wife of said J. N. W, was a party. Sometime after said deed was so made and delivered by said J. N. W. to said W. P. G., the said W. P. G. took said deed to said J. N. W., and wished to know if said J. N. W. could not change the deed, to said G. W, G., as he (said W. P. G.) had sold said lot of land to the said G. W. G., and the said J. N. W. then inserted in the said deed the name of said G. W. G. in place and in lieu of the name of said W.' P. G. Some misunderstanding was afterwards gotten up between the said W. P. G. and G. W. G., and said W. P. G. notified said J. N. W. to hold the deed until the difference between them was settled. And accordingly said J. N. W. did hold the said deed until the 10th day of October, 1874, and then gave it to said G. W. G., and he on the same day had it recorded in the clerk's office of said Harrison county. On the 5th day of June, 1874, L. S. D. & Son, recovered against said J. N. W. & W. H. J. as partners under the firm name of J. N. Wilkinson & Co., a judgment in the circuit court of said county of Harrison for the sum of $373.09, with interest from May the 25th, 1874, and $12.45 costs, and afterwards on the 11th day of August, 1874, the said judgment was docketed in the clerk's office of the county court of said county according to law. On the 18th day of August, 1874, H. P. & Co. obtained a judgment against the said J. N. W. by confession in the clerk's office of said circuit court for the sum of $796.98, with interest thereon from the 18th day of August, 1874, and costs, and the last named judgment was docketed in the clerk's office of the county court of said county on the 31st day of August, 1874. The said contracts in writing of 1868 and 1869 for the sale of said lot of land by said J. N. W. to said E. B. H. were never admitted to record, and the said deed of the 19th day of September, 1871, from said J. N. W. to the said W. P. G. was never admitted to record. On the 28th day of September, 1874, the said L. S. D. & Son commenced their suit on the equity side of the circuit court of said county of Harrison, against said J. N. Wilkinson and others, to enforce the judgment-lien of their said judgment against lands of the said J. N. Wilkinson in the bill mentioned, but do not mention therein the said lot of land sold by said J. N. W. to the said E. B. H. In their bill the said L. S. D. & Son state the said judgment of said H. P. & Co. as a subsisting judgment, and they make the said H. P. & Co. defendants thereto. Afterwards the said L.

1880
Special Term.

Delaplain & Son
v.
Wilkinson & Co.
et al.

S. D. & Son, filed an amended bill in the cause praying, among other things, that the said lot of two acres of land be sold to satisfy their judgment-lien thereon. The defendant, G. W. G., filed his answers to said bills, in which he in substance denies substantially that the said judgments or either of them are under the circumstances above stated liens upon said lot of two acres of ground. Afterwards the said circuit court upon hearing dismissed the plaintiffs' said bills as to the said G. W. G., and decreed that said G. W. G. should recover his costs therein against the plaintiffs, for the reason, as stated in the decree of dismissal, that the court was of opinion, that the house and lot owned by said G. W. G. and in controversy in this cause is not subject to the lien of either of said judgments. HELD:

1. That the said circuit court erred in said decree in dismissing the said bills as to the said G. W. G., and in decreeing costs against the plaintiffs; and that the said circuit court erred in its said opinion stated in the said decree of dismissal.

2. It is immaterial whether the creditor *has notice* or not, when the debt was contracted. The statute declares it void as to all creditors, without discriminating as it does in the clause touching purchasers, in respect to notice. *Guerrant* v. *Anderson*, 4 Rand. 212; 2 Min. Inst. 866, 872.

Appeal from a decree of the circuit court of the county of Harrison, rendered on the 19th day of December 1879, in a cause in said court then pending, wherein Lewis S. Delaplain & Son were plaintiffs and Jasper N. Wilkinson & Co. and others were defendants, allowed upon the petition of Hurst, Purnell & Co.

Hon. A. B. Fleming, judge of the second judicial circuit, rendered the decree appealed from.

HAYMOND, JUDGE, furnished the following statement of the case:

It appears, that on the 28th day of September, 1874, Lewis S. Delaplain and Robert M. Delaplain, merchants and partners under the firm, name and style of L. S. Delaplain & Son, brought their suit in equity in the circuit court of the county of Harrison against Jasper N. Wilkinson and William H. Jones, merchants and partners under the firm, name and style of J. N. Wilkinson

& Co.; and John E. Hurst, James Maddox, Richard Purnell and Loyd L. Jackson, merchants and partners under the firm, name and style of Hurst, Purnell & Co.; and John W. Coffman ; and that afterwards, at the October rules, 1874, of said court the plaintiffs filed their bill in the cause against the defendants therein. The plaintiffs in their bill allege substantially, that on the 5th day of June, 1874, they recovered in the said circuit court of Harrison county a judgment against the defendants, J. N. Wilkinson & Co., for $373.00, with interest from the 25th day of May, 1874, and $12.45 costs; that they caused a writ of *fieri facias* to be sued out upon said judgment, which was returned "no property found"; that the said J. N. Wilkinson & Co., have in fact no personal estate, out of which the said judgment or any part thereof can be made; that the plaintiffs caused the said judgment to be docketed within ninety days from the time it was obtained, to wit: on the 11th day of August, 1874, in the judgment-docket in the clerk's office of the county court of Harrison county ; that the defendants, Hurst, Purnell & Co., obtained a judgment against the defendant, J. N. Wilkinson, on the 18th day of August, 1874, by confession in the clerk's office of the circuit court of Harrison county, for the sum of $796.98, with interest thereon from the 18th day of August, 1874, which was docketed August 31, 1874, in the proper office of said county, which plaintiffs suppose, remains unpaid; that the said firm of J. N. Wilkinson & Co., does not own any real estate, nor does the defendant, Jones, own any ; that at the time plaintiffs' judgment was obtained the defendant, Wilkinson, was and still is the owner in fee simple of the following land and lots, on which their said judgment is a lien, to wit: a lot in Bridgeport, Harrison county, containing one acre; another in same place containing one fourth of an acre; another lot or parcel of land situate on Smith's run rear Bridgeport, Harrison county, containing eight· acres and fifty poles, and on

branch of Simpson Creek—deed of B. Stout to Wilkinson marked "S" and made part of the bill ; that the defendant, Coffman, sets up some sort of claim to a portion of said lots and land, but whatever claim that may be, plaintiffs say that it does not affect their lien, because their judgment was obtained and docketed, before the said claim was acquired. The plaintiffs pray, that said land and lots be sold to pay and satisfy their said judgment, and also for general relief.

On the 4th day of December, 1874, the defendants, Hurst, Purnell & Co., filed their joint answer, in which they substantially admit the allegations of the bill and claim that their judgment is unpaid. They also say, that in addition to the land in the bill mentioned, the said Wilkinson had executed a conveyance to one George W. Golden for a tract of land containing two acres situated in said Bridgeport about the time of the rendition of their judgment, which conveyance was not admitted to record until the 10th day of October, 1874, and they insist, that said land is liable to the judgment of plaintiffs and also their judgment; and they ask, that said land be subjected to the payment of their said judgment next after that of plaintiffs, &c. On the 10th day of December, 1874, the said court on motion of plaintiffs remanded the cause to rules, with leave to plaintiffs to amend their bill and make new parties.

Afterwards, at the February rules, 1875, the plaintiffs filed an amended bill, in which they make additional parties. In this amended bill the plaintiffs by way of amendment to the original bill say, that since the original bill was filed, they have discovered, that the defendants, George W. Golden, William P. Golden and Ellen B. House, set up some sort of claim to two acres of ground situated in Bridgeport, Harrison county, which belongs to the defendant, Jasper N. Wilkinson, (more particularly described in a deed from the said Wilkinson to the defendant, Golden, filed with the bill as part thereof, marked "G.") and on which the plaintiffs' judg-

ment is a lien; that it appears from the deed the defend-
ants, Susan A. V. Moore and C. W. Moore, to the de-
fendant, Wilkinson, for a tract of six and one fourth
acres of ground near Bridgeport, (which is believed to
be a part of the lot of eight acres and fifty poles de-
scribed in the original bill) that a lien is retained in
favor of the defendants, Susan A. V. Moore and C. W.
Moore, on the said lot for the payment of $575.00 of
purchase-money with the interest thereon, which the
plaintiffs charge has long since been paid, and the said
lien discharged, so that plaintiffs' judgment is a lien
thereon free from said vendor's lien. The additional
defendants made to the cause by the amended bill are
George W. Golden, W. P. Golden, Ellen B. House,
Susan A. V. Moore and C. W. Moore; and the plaintiffs
pray, that the lots and lands described in the original
and amended bill be sold to pay their judgment, and for
general relief.

The defendants, Hurst, Purnell & Co., in their answer
to the amended bill claim, that their said judgment is a
lien on all the land set forth in said original and amended
bill next after the judgment of the plaintiffs.

In May, 1875, the defendants, Susan A. V. Moore and
C. W. Moore, filed their answer to said bills, in which
they admit the recovery and docketing of the several
judgments recited therein. They also admit all the
matters charged in the bills, except they aver that it is not
true, as alleged in the amended bill, that the vendor's
lien for purchase-money has been discharged in full, and
they file as part of their answer the two single bills,
given by the said J. N. Wilkinson to the said Susan A.
V. Moore, the consideration whereof was the six and
one-half acres of land conveyed by C. W. Moore and
Susan A. V. Moore, lying near the village of Bridge-
port, mentioned in the plaintiff's bill, and the said
Susan A. V. Moore and C. W. Moore claim a vendor's
lien for the purchase-money for the amount of $400.00,
with interest according to the face of the notes, which

has never been paid. And they pray that the land be sold, and that their lien on the land be first paid, &c.

On the 9th day of June, 1875, the defendant, George W. Golden, appeared in court and filed his answer to the plaintiffs' said bill (to which the plaintiffs replied generally), in which he says he admits, as alleged in the bills, the recovering and docketing of the several judgments therein named, and that the said J. N. Wilkinson & Co. are not possessed of sufficient personal property to pay the same. He also states, that on the 19th day of September, 1871, the said J. N. Wilkinson conveyed to him, by deed, a certain lot or parcel of ground containing two acres, situated near or adjoining the town of Bridgeport, and that the deed was duly admitted to record on the 10th day of October, 1874; but he denies, that either the plaintiffs or his co-defendants, Hurst, Purnell & Co., have any lien on said lot by virtue of their said judgments. He states the facts to be as follows, viz: " That in 1869 the said J. N. Wilkinson sold said lot to one E. B. House, and executed to him a title-bond therefor; the said House at once took possession of said lot and continued to hold and claim the same as his own until September, 1871, when he sold the same to William P. Golden, the brother of defendant, who in turn was put in possession of the same, and held and claimed it as his own until he sold the same to him for $800.00, a portion of which sum was paid by receiving a credit for $350.00 he had paid to said House for the defendant, W. P. Golden, on the latter's purchase from said House, and the remainder of said sum was paid to the said William P. Golden and Dr. William M. Late, who held a note of the said William P. Golden, with respondent as his surety; that no conveyance for said lot was made by said Wilkinson until after the respondent became the purchaser and owner thereof, when the deed for the same was made to him by said Wilkinson; that the respondent not being a learned man in the law, and having no suspicion that his title was in jeopardy, as he and

1880
Special Term.

Delaplain & Son
v.
Wilkinson & Co.
et al.

those under whom he claimed had been in possession of and exercising ownership over said property since 1869, omitted to place on record the deed for the same until October, 1874; that his purchase was a *bona fide* one, and since becoming the owner of said lot, which had no improvements thereon when he purchased the same, he has put improvements thereon amounting in value to not less than $600.00; that said improvements consist of a dwelling-house, stable, blacksmith's shop, and wagoner's shop, a well and necessary out-buildings; and in making them he has expended all his hard-earned means, the accumulation of years of toil and labor; that long anterior to the date of the several judgments named in the bills, the plaintiffs and the said Hurst, Purnell & Co. were advised and informed of the real estate owned by said Wilkinson, and that they all knew the said lot did not belong to him, and had not been claimed by him since the sale to House in 1869; and it was notorious in the neighborhood that the title to the same was in equity vested in other parties, said Wilkinson's alienees; that he insists that the mere omission to record his deed should not, under all the circumstances, induce a court of equity to hold said property liable to satisfy the lien of said judgments, and that should it be sold the defendant is entitled in preference either to said plaintiffs or said Hurst, Purnell & Co. to have the value of his improvements made thereon paid out of the proceeds of the sale of the same, &c.

Afterwards, on the 23d day of June, 1875, it appears, that "the cause came on to be heard, on the bill and amended bill and exhibits therewith filed, the answers of the defendants, Susan A. V. Moore and C. W. Moore, and the answer of George W. Golden, and replication to said answers, and the answers of the defendants, Hurst, Purnell & Co., to the original and amended bills, and process regularly served, and bills filed and regularly taken for confessed against the other defendants, and on the depositions taken in the cause, and was argued by

counsel ; on consideration whereof, it is adjudged, ordered and decreed, that there is a lien on all the real estate in the bill and exhibits described.

" First, for the payment to the plaintiffs of their judgment against the defendants, J. N. Wilkinson & Co., for $373.09, with interest thereon from the 25th day of May, 1874, and $12.45, costs of suit at law ; and second, for the payment to the defendants, Hurst, Purnell & Co., of their judgment against the defendant, J. N. Wilkinson, for $796.98, with interest thereon from the 18th day of August, 1874, and $—— costs of suit at law.

" And it is further adjudged, ordered and decreed, that there is a vendor's lien on the tract of six and one sixth acres of land described in the plaintiffs' bill for the payment to the defendant, Susan A. V. Moore, of the sum of $400.00, with interest on $200.00, part thereof, from the 25th day of April, 1874, and interest on $200.00, residue thereof, from the 25th day of September, 1874 ; which vendor's lien has preference over the two foregoing liens, as to said tract of land.

" It is therefore further adjudged, ordered and decreed, that unless the defendants, J. N. Wilkinson & Co., or some one for them, shall within thirty days pay to the parties respectively entitled thereto, the foregoing sums of money, and pay the plaintiffs the costs of this suit, Edwin Maxwell, who is hereby appointed a commissioner for the purpose, do sell at public auction to the highest bidder, at the front door of the court-house of this county, at some court day, the following lots and tracts of land in the bill described :

" A lot in Bridgeport, in this county, containing one acre.

" Another lot in same place containing one quarter of one acre.

" Another tract of eight and one half acres of land on Smith's run, a branch of Simpson's creek.

" Another tract or lot of ground near Bridgeport, in this county, containing six and one sixth acres, for suffi-

cient cash in hand to pay the costs of this suit, and the expenses of sale, and the residue on a credit of six, twelve and eighteen months, with interest from the day of sale, taking from the purchasers bonds with security for the deferred instalments, and retaining a lien on the land as a further security. Said commissioner having first advertised the time, terms and place of sale for at least four weeks prior thereto, by advertisement published in some newspaper in this county and posted at the front door of the court-house of this county for a like period," &c.

It further appears, that under and by virtue of said decree Commissioner Maxwell on the 30th day of November, 1875, sold the tract of three acres of land near Bridgeport to James A. Preston at the price of $158.00; that on the same day he sold the tract of eight and one half acres for $175.00 to Amos Sees; that on the 2d day of December, 1875, he sold to J. W. Coffman the lot of one quarter of an acre and storehouse thereon in Bridgeport at the price of $380.00; and on the 8th day of January, 1876, it appears, that said sales were confirmed by the court, &c.

Afterwards, on the 16th day of January, 1879, the said defendant, George W. Golden, appeared in court and filed his amended answer to said bills, to which the plaintiffs replied generally. In this amended answer the respondent says, that the lot of land in controversy was purchased by E. B. House from the defendant, J. N. Wilkinson, in the years 1868 and 1869 upon the terms and for the price stated in the two paper-writings or title-bonds filed with the deposition of J. N. Wilkinson, taken in this cause on the 8th day of April, 1876; that said title-bonds were held and retained in the custody of said House until long after the institution of this suit, and were not and never had been in the custody or possession of either the respondent or the said W. P. Golden, nor were the existence and whereabouts thereof known to them or either of them until a few days or a very short time before the taking of said deposition; that

*1880
Special Term.*

*Delaplain & Son
v.
Wilkinson & Co.
et al.*

said Wilkinson never executed to said House any deed for the land, although the said House took possession thereof and continued in the possession thereof until the year 1871, when he sold the same to W. P. Golden by verbal contract, who immediately took possession thereof, and held and claimed it as his own until the — day of August, 1872, without any written contract or deed from either the said House or Wilkinson; and on the — day of August, 1872, the said W. P. Golden by verbal contract sold the same to respondent for the price of $800.00, which respondent paid as stated in his original answer, and said W. P. Golden put respondent in possession of the same, and respondent retained and kept possession of the same under the said verbal contract of purchase, making valuable permanent improvements thereon, without any deed or contract in writing either from the said W. P. Golden or J. N. Wilkinson, until the 10th day of October, 1874, when the said J. N. Wilkinson delivered to respondent a deed for the same, a copy of which is filed in the cause as an exhibit marked "G." Further answering the respondent says, that while the said deed bears date the 19th day of September, 1871, it was never delivered to, nor was it ever in the custody of respondent, until the day it was admitted to record, some three years after its date; that during all that period the legal title to said land was retained and kept by said Wilkinson. And respondent insists, that having made a *bona fide* purchase of said land long anterior to the rendition of the said judgments sought to be enforced against said land, to wit: on the — day of August, 1872, by a verbal contract, and having held and been in possession thereof under said contract until the 10th day of October, 1874, when he received and caused to be admitted to record a deed therefor, the said judgments constitute no liens thereon, and respondent's equitable title is superior and paramount to the liens of the said judgments, &c.

1880
Special Term.

Delaplain & Son
v.
Wilkinson & Co.
et al.

The title bonds mentioned in said amended answer are as follows :

"BRIDGEPORT, W. VA., December 28, 1868.

"Received this day of E. B. House one horse and his note of hand for $50.00, due January 1, 1870, at the payment of which note I am hereby bound to make him a warranty deed to a certain lot of ground, situated near the stone school-house of Bridgeport, and bounded as follows : Beginning on the old line of the Coplin survey at the abutments of the Pike bridge, and running with said pike to a large stone ; then up the hollow due north crossing the run, until on a line between the south corner of D. D. Wilkinson's house, a large chestnut tree ; then southwest by the said chestnut to the original line ; then with said line to mouth of run ; then up creek-bank to beginning ; being a part of the lot deeded by D. D. Wilkinson and wife to J. N. Wilkinson. Witness my hand and seal the day and year aforesaid.

"J. N. WILKINSON, [Seal.]"
"(Inter. Rev. 5 cents, J. N. W., Dec. 23, 1868.)"

"This agreement made this 22d of April, 1869, between J. N. Wilkinson, of the first part, and E. B. House of the second part witnesseth, that the said party of the first part hereby agrees to sell to said party of the second part a certain lot of land adjoining land of D. D. Wilkinson and E. Riley and being balance of land, deeded by D. D. Wilkinson to J. N. Wilkinson for the sum of $130.00 dollars, for which sum said party of the second part, has executed his note, payable January 1, 1871, with interest. Now, if said party of the second part pays said amount at said date, said J. N. Wilkinson is hereby bound under penalty of $260.00, to make him a warranty deed for said lot, otherwise the land reverts to said party of the first part.

"J. N. WILKINSON, [Seal.]
("Int. Rev. 5 cents, J. N. W., April 22, 1869)."

Several depositions were taken and filed in the cause by the defendant, G. W. Golden. The deposition of

William M. Late is as follows, viz: "That he resides in Bridgeport and is acquainted with defendant, G. W. Golden; that he knows the lot that the defendant, Golden, lives on; that he don't know how long he has been the owner of it; he thinks he came in possession of it sometime in the year, 1871; he thinks Elam House was in possession of and claiming said lot, prior to the possession of it by the said Golden; that House was in possession of it a year or two before Golden got it—it was more than a year he thinks; it was his understanding, that House was claiming the property as his property under purchase from J. N. Wilkinson; that he does not know of said Wilkinson having possession of or claiming said lot since House took possession of it; does not know what House paid for said property; at the time House left there (Bridgeport) he (House) owed him some money, and proposed to trade him (witness) claims he had on Golden, which Golden owed him for his lot, and for the claim he (witness) had on House, Golden executed to witness and his brother John two notes, for $100.00 each, John afterwards assigned to witness his note; a dwelling-house has been put upon said lot and also a blacksmith's shop; House put up the blacksmith's shop and stable, and Golden put an addition to the shop; House also put up a wagonmaker's shop; there has also been a dwelling-house erected on a part of this lot by Howard Haley, who claims to have purchased it of defendant, Golden. This house was put up the latter part of last fall (1874); witness heard that Haley had bought the lot of Golden some time prior to the erection of the house; that he thinks the improvements put upon the lot by Golden and House and Haley would be worth some $700.00 or $800.00 or more in value, as near as he could express an opinion; that the improvements made by Haley would amount to $100.00 or $150.00; that there was some fencing made and a well dug by Golden on the lot also; the well had been commenced by House; the other improvements were made by House and would

make up the estimate he has placed upon the improve-
ments; the old lot was just a naked lot when House
came into possession of it; the lot at that time would be worth $200.00 possibly. On cross-examination the said witness says, that the said lot is worth at this time exclusive of any of the said improvements, $300.00.

Jasper N. Wilkinson in his deposition says substantially as follows: That he resides in Bridgeport, Harrison county; that he is one of the defendants to this suit; that the two acres of land in the bill mentioned were conveyed to him by D. D. Wilkinson and wife, in the spring, he thinks, of 1867 or 1868, and in the fall of 1868 he sold a part of it to E. B. House; and in the spring of 1869, he thinks, he sold to said House, the remainder, and gave him a title-bond, binding himself to make him a warranty deed when the purchase-money was paid. His recollection is that he was to give him $210.00, for the entire lot, and executed his notes payable, he thinks, in one and two years from the spring of 1869. He paid part of the first note in the summer of 1869. In September, 1871, he thinks, House sold the lot to Wm. P. Golden, a brother of defendant, George W. Golden, and George W. Golden paid him (witness) the balance of the purchase-money, and the two Goldens together paid House in his (witness's) presence, he thinks, $350.00, and House directed him to make the deed to W. P. Golden; that he made the deed on the 19th day of September, 1871, he thinks, and acknowledged it before E. Benedum, Esq., on the same day; that his wife joined with him in it, and he delivered it to W. P. Golden.

Sometime after this, W. P. Golden brought the deed to him (witness) and wished to know if he (witness) could not change the deed to George W. Golden, as he had sold the lot to the said George W. Golden; that he (witness) inserted in the deed George W. Golden in the place of W. P. Golden; that some misunderstanding was got up between W. P. and G. W. Golden, and W.

P. Golden notified him (witness) to hold the deed, until the difference between them was settled; that he held the deed until some time in the year 1874, and gave it to G. W. Golden, and he had it put upon record.

When he sold the lot to House there was no fence around it; House built a small frame dwelling-house, a blacksmith's shop and a wagonmaker's shop on said lot; he (House) commenced digging a cellar and well, after he sold to Golden, George W. Golden completed the cellar and well, completed the house and had it painted, and built an addition to it, and also an addition to the blacksmith's shop, and enclosed the greater part of the lot with a post and plank fence; that some time in that summer, he thinks of 1874, George W. Golden sold a part of said lot to Howard Haley, and Haley erected a dwelling-house on it; he would say the improvements on that lot are well worth $700.00; House told him (witness) at the time he sold out to Golden, that his improvements cost him about $28.00, and that he had made a nice profit on the lot; that he would say Golden's improvements would amount to $270.00 and Haley's about $150.00.

He thinks it was the first bill of goods he bought of plaintiffs, some time early in the summer of 1872 their agent, Mr. Giles, was at his (witness's) store in company with Mr. Cruickshanks, he thinks of the firm of Greer & Laing. Plaintiffs' agent had his samples and he (witness) wished to buy some goods from him. He asked him (witness) what he was worth, and what real estate he owned, and he told him that he owned a lot on which his old storehouse stood, and ten acres of land on Simpson creek, and told him that was all the real estate that he owned, and in March, 1874, he gave to Delaplain himself a verbal statement of what real estate he (witness) owned, and notes and accounts that he claimed at the time; he then and there took it all down with his pencil; that this lot of Golden's was not included in this statement, because he (witness) did not own it, and in

the statement that he gave to Delaplain, he told him, that was all the property he owned; that he had also told the same to Gibbs before that time.

The conversation with Gibbs occurred before he (witness) had contracted any debt to the plaintiffs; and the goods, for which he was sued by the plaintiffs, and the judgment in the bill mentioned was recovered against him, were purchased by him of said Gibbs, plaintiffs' agent, after the said conversation with him.

*As to the defendants, Hurst, Purnell & Co.*—In the summer of 1873 Lloyd L. Jackson came to the house of him (witness) to see him—the same Lloyd Jackson mentioned in the bill as a member of the firm of Hurst, Purnell & Co. He (witness) was working in the garden at the time; the way he (witness) came to remember it, it was shortly after the birth of his second child. He (witness) went down to the store with Jackson. He (Jackson) asked him on the way down if he owned the house and lot where he was then living. Witness told him that it belonged to his wife, but that he owned the lot where the old storehouse stood, and that he owned ten acres of land on Simpson's creek and six acres near Bridgeport, and had a vendor's lien for about $300.00 on a lot of four acres that he had sold to Whitney. He (witness) showed him the lot of George W. Golden, and told him that he did own it at one time, but had sold it; that was the conversation that occurred between them; that he was standing on the porch at the time, and showed him the lot; that Jackson was at that time connected with the house of Hurst, Purnell & Co., and travelling and selling goods for them; that the conversation with Jackson occurred before he sold the goods to him (witness) upon which the judgment was recovered against him; that at a later period, and after the purchase he had made of this firm, he had a conversation with said Jackson, when he told him that he (witness) had a note assigned to him by Golden, that owned that lot which he showed him, for about $900.00, and Jackson asked him if he could

33

not turn that note over to them, and he (witness) told him he would do so if he could, after he went home. This conversation occurred in Baltimore. Witness also said that the judgments of plaintiffs and Hurst, Purnell & Co. for the amounts in the bill stated were rendered for goods sold him while he was in business as a merchant in the town of Bridgeport.

The said Jasper N. Wilkinson further states in his deposition taken subsequently, to wit, on the 8th day of April, 1876, that the papers in writing then shown to him marked "A" and "B" were executed by him on the days they respectively bear date to E. B. House for two lots of land, being the same land subsequently sold to the defendant, George W. Golden, as mentioned in this cause; that they are the title-bonds referred to by him in his answer to the first question propounded to him, when his deposition was taken heretofore in this cause on the 7th day of May, 1875; that the said title-bonds were delivered by him to House, and to the best of his belief have been in his possession or under the control of said House, who is now a resident of the State of Kansas, until they were recently sent by him to the defendant, George W. Golden, at his request, to be used as evidence in this cause; that when his deposition was formerly taken said papers were not here; that his information and understanding is that Golden received the said papers from House by mail since the last term of the circuit court for this county.

The defendant, George W. Golden, in his deposition taken for himself says, that he had no written contract, or deed of any kind, or description, until the deed from J. N. Wilkinson was delivered to him on the 10th day of October, 1874; that while that deed bears date on the 19th day of September, 1871, it was never delivered by said Wilkinson to him until the 10th day of October, 1874, and that he had it put on record in two hours or less after he got it; that before he got that deed he had been in possession of said property under his purchase from his

brother by verbal contract for about two years, holding and claiming it under a verbal contract with him ; that he had paid all the purchase-money in 1872; that before he went into possession his brother was in possession under a verbal contract made with E. B. House, from whom he purchased said lot, and he (his brother) was in possession, when he sold to witness, and he had been since the year 1871, until he sold to him ; that it appears the said House had a title-bond from said Wilkinson, but that bond was never in the possession of either his brother or himself, nor did he know of its existence or where it was, until a short time before J. N. Wilkinson's deposition was taken in this cause in April, 1876 ; that House, it seems, had retained the custody of said title-bond, and it was sent by him to Wilkinson a short time before the deposition of Wilkinson was taken in 1876; that he purchased the said lot from his brother sometime in the summer or fall of the year 1872; that he thinks it was in the month of August, 1872; that he never had (as before stated) any deed or contract for said land until the 10th day of October, 1874.

This is all the defendants' evidence. It fully appears, that the judgments in the bill mentioned were obtained and docketed as in the bill alleged, the plaintiffs' judgment being rendered on the 5th day of June, 1874, and duly docketed on the 11 day of August, 1874, and the judgment of the defendants, Hurst, Purnell & Co., was confessed on the 18th day of August, 1874, and docketed 31st of August, 1874. The said deed from Jasper N. Wilkinson and his wife to defendant, George W. Golden, for the lot of land in controversy appears from the face of the deed and certificates thereon to be dated the 19th day of September, 1871, and to have been acknowledged on the same day before Emanuel Benedum, a justice of Simpson township, Harrison county, West Virginia ; and that the said deed was admitted to record in the clerk's office of the county court of Harrison county, on the 10th day of October, 1874. But said title-bond of

1880
Special Term.
─────────
Delaplain & Son
v.
Wilkinson & Co.
et al.

Wilkinson to House and the said deed from Wilkinson to said W. P. Golden never were admitted to record.

On the 19th day of December, 1879, the circuit court of said county of Harrison made and entered in this cause the following decree, viz:

"The plaintiffs have leave to amend their bill in this cause by making W. P. Golden and Elam B. House parties defendant thereto, which by consent is here done in open court, and the said defendants appeared by counsel and demurred to said bill, which demurrer the court doth overrule.

"And this cause came on this day to be again heard on the papers heretofore read, former order made therein, and upon the amended answer of George W. Golden, general replication thereto and depositions; and was argued by counsel. On consideration whereof it is adjudged, ordered and decreed, that the plaintiffs' bill as to the said defendant George W. Golden be dismissed, the court being of the opinion that the house and lot owned by said Golden, and in controversy in this cause, is not subject to the lien of the judgment of Hurst, Purnell & Co., against defendant Wilkinson, or to the lien of the judgment in favor of the plaintiffs. And it is further ordered and decreed, that this defendant Golden recover against the said plaintiffs, his costs in this behalf expended."

From this decree the said Hurst, Purnell & Co. upon their petition and assignment of errors obtained an appeal to this court. And the said decree is before this court for review and determination.

*John Bassell*, for appellants.

*John J. Davis*, for appellees, cited the following authorities:

Code of W. Va., p. 474, § 4; 2 Gratt. 182; 4 Gratt. 407; *Floyd* v. *Hardwig*, 28 Gratt. —; 2 Min. Inst. 857; *Id.* 873; 6 Rand. 618, 649.

HAYMOND, JUDGE, announced the opinion of the Court:

The appellants have assigned in their petition the following as errors in the decree for which as they insist that it should be reversed, viz :

"1st. As no deed or contract in writing with J. N. Wilkinson, the judgment debtor for said lot, was admitted to record until after the judgments of plaintiffs in said cause and the judgment of defendant were recorded and docketed, the judgments were a lien on the land.

"2d. But if it should be held, that a verbal contract with a judgment-debtor, made before the judgment was rendered, under which the purchaser took possession, and held so as to entitle him to a conveyance of the legal title, would be valid as against subsequent judgments, still the decree complained of was erroneous, as Wilkinson had sold by contract in writing to House in 1869, which contract was not admitted to record, and as he further conveyed the legal title to W. P. Golden, (not G. W.,) by the deed of September 19, 1871, which was not recorded until October, 1874, said G. W. Golden, would not have been protected against said judgments, *even if he had had a written contract with W. P. Golden or E. B. House, duly recorded,* before the 5th day of June, 1874, or the 18th of August, 1874. And that as such a written contract duly recorded would not have protected him, a verbal contract can not have a greater effect."

So much of the errors so assigned as it is deemed proper and necessary to consider and decide in this case I will now proceed to consider and determine.

The statute 1st Revised Code of Va., ch. 99, § 4, of 1819, p. 362, says : "All bargains, sales and other conveyances whatsoever of lands, tenements or hereditaments, whether they be made for passing any estate of freehold or inheritance, or for a term of years, and all deeds of settlement upon marriage, wherein either lands, slaves, money or other personal thing, shall be settled or covenanted to be left or paid at the death of the party or otherwise ; and all deeds of trust and mortgages whatsoever, which shall hereafter be made and executed, shall be void as to all creditors, and subsequent purchasers for

valuable consideration without notice, unless they shall be acknowledged and proved and lodged with the clerk to be recorded according to the directions of this act; but the same, as between the parties and their heirs, and as to all subsequent purchasers with notice thereof or without valuable consideration, shall nevertheless be valid and binding." And the 12th section of said chapter declares that every conveyance in this act mentioned except deeds of trust and mortgages, which shall be acknowleged, proved or certified according to law, and delivered to the clerk of the proper court, to be recorded, within eight months after the sealing and delivery thereof, shall take effect and be valid, as to all persons, from the time of such sealing and delivery," &c.

Under this statute the case of *McClure* v. *Thistle's ex'rs*, 2 Gratt. 183, was decided. In this case it was held, that " a deed, executed before judgments have been obtained against the grantor, under which the purchaser has been put in possession and paid the purchase-money, but which was not recorded until after the judgments were obtained, is void as against such creditor, and the land conveyed thereby is subject to satisfy the judgment." In this case the opinion of the Court of Appeals is not published.

In the case of *Withers* v. *Carter et al.*, 4 Gratt. 407, brought and decided under the same statute, it was held, that a deed, which was lost after it was executed, and before it was recorded, is void against creditors of the grantors, and cannot be set up against them in a suit by the grantee brought more than eight months after its execution ; that although the statute avoids an unrecorded deed as against creditors of the grantor, it does not affect a pre-existing equitable estate of the grantee acquired by purchase from the grantor, and in this case in the opinion of the court a distinction is drawn and laid down between it and the case of *McClure* v. *Thistle's ex'rs., ubi supra*. In the said case of *Withers* v. *Carter et al.*, aforesaid, it seems, that on the 27th day of February, 1834,

William H. Triplett, by a contract under seal, sold to Jonathan Carter a tract of land in the county of Loudon, containing about one hundred and sixty-six acres, at $18.00 dollars per acre; and put him in possession thereof. The terms of the sale, were that Carter should pay $600.00 on the 1st of June following, when Triplett was to convey the land by deed with general warranty; $600.00 was to be paid on the 1st of January, 1835, and the balance amounting to $1,791.26, on the 1st of January, 1837; the deferred payments to be secured by a deed of trust on the land. The two first payments were made by Carter, and on the 15th of January, 1835, he executed his bond for the last. On the 25th of January Triplett and wife executed a deed to Carter for the land, and acknowledged it before two justices, who duly certified the acknowledgement of the husband and the privy examination of the wife. This deed was committed to a son of Jonathan Carter to be delivered to the clerk of the county court of London county for record, and was by him lost, and was never found. On the 27th of January Carter executed the deed of trust as required by his contract, and that was duly recorded. On the 4th of March, 1835, Triplett assigned Carter's bond for $1,791.26 to John and James Withers to be applied in part to the satisfaction of an execution, which they then had against him. This execution had been awarded on a forfeited forthcoming bond, which was defective for want of security, but had not been quashed, and the bond had been taken on an execution issued upon a judgment recovered by them against Triplett in 1833. The award of execution was on the 27th day of January, 1835, at a special term of the circuit court of Frederick county, which commenced on the 26th of the same month; and the bond had not been previously lodged with the clerk. At the special term of the circuit court of Frederick county, a decree was made against William C. Triplett and Grubb's administrator as sureties of Lane, executor of Raney, in favor

1880
Special Term.

Delaplain & Son
v.
Wilkinson & Co.
et al.

of Isaac R. Ellzra and others, legatees of Raney for $1,288.34 with interest and costs. There had been a decree for an account in this case in 1833; and at the commencement of the term the suit was on the deferred docket. The commissioner filed his report on the 29th of January, 1835, and the cause was set for hearing by consent on the 7th of February following, on which day the decree aforesaid was rendered.

In this case Judge Baldwin in delivering the opinion of the court at pages 410 and 411 says: " The deed from Triplett to Carter not having been delivered to the clerk to be recorded is void as against the creditors of Triplett, and cannot be set up against them in this suit, brought more than eight months after the execution of the deed, though proved to have been accidentally lost in the attempt to transmit it to the clerk's office. Whether equity would have set up the deed, in a suit brought against the creditor within the eight months, is a question that does not arise in this case. But though the statute avoids the deed as against the creditors of the grantor, it does not affect the pre-existing equitable estate of Carter, acquired by purchase from him. The judgment and decree in question were obtained at the January term, 1835; and Carter was then the owner of the land. He bought it, as appears from the articles of agreement, in February, 1834, received the possession, and had paid up a considerable part of the purchase-money. Nothing was wanting but a valid conveyance of the legal title, and that he would have had but for the intervention of the statute, a perfect deed having been made to him before the commencement of the term, which however by reason of its accidental loss was not delivered to the clerk for recordation. If no deed had been made at all, it is clear that Carter's title would have been good in equity, though not at law, against creditors of Triplett by judgments subsequently recovered. The effect of the statute was to render the deed *quoad* the creditors of the grantor a mere nullity, and so to leave the

subject precisely in the same situation as if no deed had been made or attempted."

The judge, after citing Sug. Vend., Am. ed. of 1836, from 9th Lond. ed. 613 ; *Burgh* v. *Francis*, 1 P. Wms. 279 ; *Taylor* v. *Wheeler*, 2 Vern. 564 ; *Finch* v. *Earl of Winchelsea*, 1 P. Wms. 282, at page 412, says : " The foregoing authorities, if any be requisite, are more than sufficient to show that a good equitable title, acquired by a purchaser, is paramount in equity to subsequent judgments of the vendor's creditors recovered before the vendee has obtained a conveyance of the legal title, or though he has obtained one that is void in law. If this were not so, then a purchaser would not be safe in relying upon an executory contract, but would be obliged to obtain a conveyance of the legal title at the moment of his purchase," &c.

Again the judge, at page 413, says : " It is the deed of conveyance, therefore, and that only, which the law avoids for want of recordation, and the executory contract is left untouched by the statute in the slightest degree. No deed of conveyance is necessary to confirm its validity, and how an abortive attempt to obtain a valid conveyance can destroy the pre-existing equitable title is beyond my comprehension ; nor can I conceive what merger there can be, in regard to creditors, of the equitable title in the legal title by force of a deed, which, as to conditions, is a blank piece of paper."

Again at page 416 the judge says : " I learn it is supposed by some, that the decision of this court in *McClure* v. *Thistle's ex'rs*, 2 Gratt. 182, gives countenance to the idea, that though a purchaser has by an executory contract acquired a good equitable title to land, which, until he receives a conveyance of the legal title from the vendor, is exempt in equity from intervening judgments against the latter, yet that such equitable title will avail him nothing, after he has obtained such conveyance, against judgments subsequently received, unless the deed has been duly recorded. But it was not the

1880
Special Term.

Delaplain & Son
v.
Wilkinson & Co.
et al.
intention to decide any such proposition, though the reported case without close examination may be liable to miscontruction, from the reporter's attention not having been drawn by the court to the reason of the general affirmance of the chancellor's decree. The case was one, in which there was no evidence of an executory contract or possession prior to the deed, nor was any asserted by the defendant's answer; he relied simply upon his deed, his possession under it, and his payment of the purchase-money," &c. This case was decided by the Court of Appeals of Virginia in 1848.

At the revisal of the Code of Virginia in 1849 an amendment was incorporated into the statute. The statute as amended is contained in sections 4 and 5 chapter 118 of the Code of 1849, which took effect on the 1st day of July, 1850 and is as follows:

" 4. Any contract in writing made in respect to real estate, or goods and chattels, in consideration of marriage, or made for the conveyance or sale of real estate, or a term therein of more than five years, shall from the time it is duly admitted to record, be as against creditors and purchasers as valid as if the contract was a deed conveying the estate or interest embraced in the contract.

"5. Every such contract, every deed conveying any such estate or term, and every deed of gift, or deed of trust or mortgage, conveying real estate or goods and chattels, shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time it is duly admitted to record in the county or corporation wherein the property embraced in such contract or deed may be."

These sections were in force in Virginia without alteration or amendment, from the time they took effect until this State was admitted into the Union in 1863, and continued in force in this State thereafter without alteration or amendment, until the Code of this State of 1868 took effect on the 1st day of April, 1869. See Code of Virginia of 1860, sections 4 and 5 of chapte

118. And the same sections were carried into the Code of this State of 1868 without amendment and constitute sections 4 and 5 of chapter 74 thereof. The amendment of the statute, so as to include contracts in writing for the conveyance or sale of real estate for a term greater than five years, may have been induced by the decision of the Court of Appeals in the case of *Withers* v. *Carter et. al.*, 4 Gratt. 407 ; and the effect of the amendment was to place such written contracts unrecorded upon the same footing as to creditors and purchasers for valuable consideration without notice, as unrecorded deeds. This being so, then every unrecorded or unregistered contract in writing for the conveyance or sale of real estate for a greater term than five years, since the first day of July, 1850, is void as to creditors and purchasers for valuable consideration, the same as an unrecorded or unregistered deed conveying such real estate or term is or would be under the statute, and as it was before the amendment.

It seems that it has long been an established rule of courts of equity, that, apart from any positive provision of a statute to the contrary, where one has an *equitable interest* in land with a good right to call for the conveyance of the legal title, and a subsequent encumbrancer (c. g. a *judgment-creditor*,) whose debt did not originally affect the lands, acquires the legal title, he shall notwithstanding be postponed to the equitable claimant. For since the subsequent encumbrancer did not *originally* take the land for his security, nor had in his view an intention to affect it, when afterwards the land is affected by his lien, and he comes in claiming *under the very person* who is obliged in conscience to make the assurance good, he stands in that person's place and is postponed, despite his legal title, to the *superior equity* of the adverse claimant. 2 Lom. Dig. 487 ; *Burgh* v. *Francis*, 1 P. Wms. 279 ; *Withers* v. *Carter*, 4 Gratt. 411 ; *Coleman* v. *Cocke*, 6 Rand. 618 ; 2 Min. Inst. 873, 874.

It must be observed, however, that this equitable

ground of priority and relief is not admitted, *against the positive provisions of a statute.* " Of this the case of *McLure* v. *Thistle's ex'rs*, 2 Gratt. 182, affords an illustration. On the 23d of December, 1835, David Agnew conveyed a lot in the city of Wheeling to John McLure, and put him in possession, but the conveyance was *not recorded until May, 21st*, 1842. Subsequent to the conveyance, but before its registry, Benjamin Thistle obtained a judgment against Agnew, upon which the latter took the insolvent debtor's oath in August, 1840, and in 1843 Thistle filed his bill to subject the lot in McLure's possession to his judgment, upon the ground (as is explained in *Withers* v. *Carter*, 4 Gratt. 416,) that McLure appeared to have had *no previous equitable title* which did not require to be registered, but from the first had owned nothing but the *legal title* created by Agnew's conveyance, which in consequence of not being recorded the statute *peremptorily declared* to be *void as to creditors*, of whom Thistle was one. Since 1st of July, 1850, (when the revisal of 1849 took effect) a similar doctrine would have prevailed in *Withers* v. *Carter*, and such like cases; for since that period *contracts in writing* for the sale of lands, or a term therein of more than five years, are like conveyances declared to be void as to creditors and subsequent purchasers for valuable consideration without notice, *until and except* from the time that they were duly admitted to record." 2 Min. Inst. 875.

Now in the case at bar it appears that on December 23, 1868, the said J. N. Wilkinson by contract sold a part of the lot of land in question to E. B. House, and at that time the contract was committed to writing and signed by Wilkinson and delivered to the defendant, House, and House was put in possession of the property purchased; and that afterwards on the 2d of April, 1869, the said Wilkinson by contract sold the residue of said lot to said House, and at that time the last named contract was committed to writing and signed by Wilkinson

and delivered to said House, and House was put in possession of the land last so purchased by him.

It further appears that House, very soon after he was so put in possession of said lot, made valuable and permanent improvements thereon, and that sometime previous to the date of the judgments in the bills mentioned the said House paid and caused to be paid to said Wilkinson the full amount of said purchase-money. It also appears that House continued and remained in possession of said lot until sometime in 1871, when by verbal contract only he sold the whole of said lot to W. P. Golden, who immediately was put in possession of the same and continued in the possession of the same until sometime in August, 1872, when he by verbal contract only sold the same to his brother, George W. Golden, and the said George W. Golden was then and there put into the possession of said lot under said verbal contract and remained and continued in such possession until the commencement of this suit, except that portion thereof perhaps of which Howard Haley was in possession under a contract of purchase from said George W. Golden.

It also appears that the said George W. Golden made valuable and permanent improvements upon the said lot after his said purchase, and that said Haley also made valuable and permanent improvements on the part he so purchased before the rendition of the judgments in the bill mentioned. And it also appears that said House received his purchase-money from the Goldens prior to the date of said judgments, as well also as the said W. P. Golden.

It also appears that in September, 1871, about the time House made the verbal contract of sale to W. P. Golden, he directed the said Wilkinson to make the deed for said lot to said W. P. Golden; that the said Wilkinson did accordingly on the 19th day of September, 1871, make and deliver to the said W. P. Golden a deed for said land duly acknowledged for record, to which the wife of said Wilkinson was a party; that some

time after the said deed was so made and delivered, the said W. P. Golden took the deed to said Wilkinson, and wished to know if Wilkinson could not change the deed to George W. Golden, as he had sold the lot to the said George W. Golden ; and said Wilkinson then inserted in the deed the name of George W. Golden in the place of said W. P. Golden ; that some misunderstanding was gotten up between said W. P. Golden and George W. Golden, and the said W. P. Golden notified said Wilkinson to hold the deed until the difference between them was settled ; and accordingly said Wilkinson did hold the same until the 10th day of October, in the year 1874, and then gave it to said George W. Golden, and he on the same day had it recorded in the clerk's office of Harrison county. But before the delivery and recordation of said deed the judgments in the bill mentioned were recorded and docketed as required by law. Said judgments however were each obtained and docketed after the said Wilkinson had so delivered the said deed to said W. P. Golden, and after the said W. P. Golden had sold the said lot to said George W. Golden. The said contracts in writing of the sale of said lot by Wilkinson to House were never recorded, and the said deed made by said Wilkinson to said W. P. Golden was never recorded.

I apprehend there can be no doubt but that the said contracts in writing of sale of said lot made by said Wilkinson to said House in 1868 and 1869 are void as to the judgments in the bill mentioned, (*Nagle* v. *Anderson*, 11 W. Va. 98) ; and if House had never sold to W. P. Golden and he to George W. Golden, I apprehend under the circumstances appearing, that it never would have been even claimed by House, that said contracts in writing and his purchase were not void as to the judgment-creditors in the bill mentioned. Does the verbal sale from House to W. P. Golden and possession by him and sale to George W. Golden and possession by him under all the circumstances change the effect of the statute upon

the case? or in other words, do they take the case out of the influence of the statute?

Under the opinion of Judge Green in *Coleman* v. *Cooke*, 6 Rand. 642 and 643, the making of the deed by Wilkinson to W. P. Golden did not transfer the equitable interest of House to W. P. Golden, but the previous direction of said House to Wilkinson to make the said deed did have that effect. Suppose then that W. P. Golden did by said direction under the circumstances acquire House's equity to a deed for said lot from Wilkinson, then W. P. Golden's equity is void as to said judgment-creditors, because the written contract for the sale of the lot, out of which his equity springs, are void as to said judgment-creditors. If W. P. Golden had had the deed made to him by Wilkinson recorded before the rendition of the judgment, of course it would under the circumstances have been valid under the statute as against said judgments. In that case the judgment-creditors of course would have no claim under the statute. But, as we have seen, W. P. Golden failed to have his deed recorded, and, so far as that deed is concerned, the case as to him stands just as though the deed never was made, and he has no equity to fall back upon except the equity he derived from the said House by his, House's, direction to Wilkinson and his, W. P. Golden's, verbal contract with House; and that equity is void under the statute as to said creditors.

In the case of *Graysons* v. *Richards*, and *Grayson* v. *Beaty*, 10 Leigh 57, the syllabus is as follows: "A father by deed of gift conveys land to a son, and shortly after the son voluntarily surrenders the deed to the father to be cancelled, with design to divest the title out of himself and restore it to the father, and the deed is cancelled. HELD, the son's title is not divested by the cancellation of the deed, and the land shall be charged in equity with the debts of the son. In such a case, a creditor having obtained a judgment against the son subsequent to the cancellation of the deed, under which the son has

taken the oath of insolvency, is not only entitled to satisfaction of his judgment out of the land· as still the property of the son, but he may also claim satisfaction out of it of a simple contract-debt which the son owes; and other creditors of the son who have not recovered judgments against him, coming in at the same time, shall be entertained to claim satisfaction of the debts due them out of the same land."

It would seem from the principles decided in this case, that the legal title passed by the deed from Wilkinson to W. P. Golden, and that the said W. P. Golden has never in fact divested himself of the legal title, and that it is yet in him. but of course subject to the judgment-debts in the bill mentioned, as that deed was never recorded. And according to said decision in 10 Leigh the said deed from Wilkinson to George W. Golden did not pass the legal title to said George W., for· the reason that it had already passed out of said Wilkinson to said W. P. Golden; and perhaps, as the deed as made acknowledged and delivered to W. P. Golden was changed by the erasure of the name of W. P. Golden and the insertion of the name of George W. Golden in lieu of the the name of W. P. Golden, the deed as thus changed as to the grantee therein could not have been lawfully ad· mitted to record without re-acknowledgment of the deed after the said material change was made. But the deed was not admitted to record until after the judgments in the bill mentioned against said Wilkinson were rendered and docketed according to law, and it is therefore unnecessary to decide whether the said deed from Wilkinson to said George W. Golden was improperly admitted to record or not.

The deed from said Wilkinson to W. P. Golden being void as to the said judgment-creditors, because not recorded, and the equitable claim of said W. P. Golden ·for said property being void under the statute as to said judgment-creditors, and the said George W. Golden having only an equitable claim against the said W. P. Gol-

1880
Special Term.

Delaplain & Son
v.
Wilkinson & Co.
et al.

den for the said property springing out of and based upon his said verbal contract of purchase made with said W. P. Golden, or at most an equitable claim to said property based upon the said equitable claim of said W. P. Golden, which was the equitable claim of said House to the same, and which, as we have seen, is void as to said judgment-creditors, the equitable claim of said George W. Golden to said lot must also be void as to said judgment-creditors, for the same reason that the equitable claim thereto of said W. P. Golden is void as to said judgment-creditors. Neither of the said Goldens ever purchased the lot in question from said Wilkinson; and the only equity they or either of them have to said lot is based and founded upon the equitable claim of said House, which is, as we have seen, void as to the said judgment-creditors under the statute; and therefore the said equitable claims of said Golden's and each of them upon said lot, which they or either of them derived from or through the said House, and which the said George W. Golden derived from said House through the said W. P. Golden, is void as to the said creditors.

This case does not in my opinion come within the influence of the case of *Floyd, trustee,* v. *Harding et als.,* 28 Gratt. 401. That case will be considered by this court when a case, to which it is properly applicable arises before us.

When the vendee has a deed or other written evidence of his purchase, there is no hardship in requiring him to place it upon record; and it may be said that it is gross *laches* not to do so. Now if in this case the said contracts in writing made by Wilkinson with House, or the deed made by Wilkinson to said W. P. Golden, had either been recorded prior to the time of the rendition of these judgments, then the said judgments would not have constituted liens upon the said lot. And it was certainly gross negligence to omit to have them recorded, and if it should be necessary to enforce the said judgments or either of them to any extent against said lot,

35

1880
Special Term.

Delaplain & Son
v.
Wilkinson & Co.
et al.

it will be because of the said *laches* and gross neglect aforesaid. It is immaterial whether the creditor *had notice* of the unrecorded writing or not, when the debt was contracted. The statute declares it void as to *all creditors* without discriminating, as it does in the clause touching purchasers *in respect to notice.* *Guerrant* v. *Anderson,* 4 Rand. 211 ; 2 Min. Inst. 866 and 872. If the contract of purchase of said House with Wilkinson, the owner, had been a verbal instead of a written contract then the case would have presented a very different question from that which the case now presents.

Syllabus 2.

For the foregoing reasons I am of opinion, that so much of the said decree of the circuit court of said county of Harrison as dismissed the plaintiffs' bill as to the defendant, George W. Golden, for the reason as stated by the last named court, that that court was of opinion, that the house and lot owned by said Golden and in controversy in the cause is not subject to the lien of the judgment of Hurst, Purnell & Co. against defendant, Wilkinson, or to the lien of the judgment in favor of the plaintiffs, and also so much of said decree as decrees that the defendant, Golden, recover against the plaintiff his costs in the suit expended, are erroneous and should be reversed.

Syllabus 1.

It appears from the evidence that Howard Haley is in possession of a part of said lot under and by virtue of some contract of purchase from said George W. Golden, and it does not appear that he was made a party to the cause. From what appears by the evidence I think he should be made a party to the cause after the case goes back to the circuit court for further proceedings, though the said decree would not have been reversed by this Court because he was not a party to said decree, as the decree, if otherwise correct, would not have been to his prejudice, and the failure to make him a party could not have worked injury to any person.

So much of said decree, as dismissed the plaintiff's bill as to the defendant, George W. Golden, for the reason

and opinion of the court stated in the said decree, and as decrees that the defendant, Golden, recover against the plaintiffs his costs in the suit expended, must for the reasons aforesaid be reversed, set aside and annulled, and the appellees, William P. Golden and George W. Golden must pay to the appellants their costs in this Court expended about the prosecution of their appeal. And this Court proceeding to render such decree in the cause, as the said circuit court should have rendered, it is adjudged, ordered and decreed, that this cause be remanded to the circuit court of the county of Harrison with instructions to said court to allow and permit the plaintiffs to file an amended bill making Howard Haley a party defendant to the cause and also such other persons as may be or become proper, and for such other and further proceedings therein to be had as are in accordance with the principles and rules which govern courts of equity.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.   CAUSE REMANDED.