# CHARLESTON

BIRCH RIVER BOOM & LUMBER COMPANY *v.* GLENDON BOOM & LUMBER COMPANY.

Submitted January 30, 1912.   Decided December 17, 1912.

1. APPEAL AND ERROR—*Judgment—Review—Reversal.*
   ' Decrees ordering and confirming sales of property and adjudicating priorities and liens, so uncertain as to their effect upon the rights of parties, when read in connection with other decrees and orders in the cause, that the appellate court cannot see whether parties have been prejudiced by it, and apparently violative of the rights of some of them, are erroneous and will be reversed.   (p. 511).

2. SALES—*Seller's Lien—Failure to Record—Reversal.*
   An unrecorded vendor's lien upon personal property is good as between the parties and as to all other persons save purchasers for value without notice and creditors of the vendee. (p. 511).

3. CHATTEL MORTGAGES—*Trust Deed—Failure to Record—Effect.*
   The creditors protected by section 5 of chapter 74 of the Code against an unrecorded deed of trust or mortgage upon personal property are lien creditors having the right to charge the property directly, not holders of mere personal demands or claims against the vendee.   (p. 511).

4. EVIDENCE—*Best and Secondary Evidence—Vendor's Lien— Reservation.*
   Admission of secondary evidence of a reservation of a vendor's lien upon personal property, in a suit to enforce it, is justified by the inability of the plaintiff to produce the deed or writing itself by reason of its loss or its having been carried beyond the jurisdiction of the state.   (p. 512).

5. EXECUTION—*Fieri Facias—Liens.*
   By virtue of section 2 of chapter 141 of the Code a *fieri facias* gives a lien, from the date of the delivery thereof to the officer, upon all the property owned by the debtor at the date of such delivery, whether leviable or not, and upon all such property as he may acquire on or before the return day thereof, and such lien continues after the return day thereof except in

certain cases specified in said section, though the execution is not docketed, as it may be under the provision of said section, and has been returned.   (p. 512).

Appeal from Circuit Court, Braxton County.

Bill by the Birch River Boom & Lumber Company against the Glendon Boom & Lumber Company and others.   From a decree in favor of plaintiff, E. H. Pierson and others appeal.

*Reversed and Remanded.*

*Hall Bros.* for appellants.

*Jake Fisher*, for appellee.

POFFENBARGER, JUDGE:

One branch of this cause has been disposed of by a decision rendered at the present term of this Court.   Some of the facts and proceedings and the general character of the suit may be gathered from the opinion then filed.

The Birch River Boom & Lumber Company filed its bill to restrain D. C. Gallaher, special receiver of the Big Tree Lumber Company, from selling certain property of the Glendon Boom & Lumber Company, under an execution which had been levied thereon, and to obtain the appointment of a special receiver to take charge of the mills and other property of the Glendon company and also the property of Austin, Neib and Yarlett, and operate the plant and convert the products into money.   Said Birch River company asserted, as the basis of its right an alleged vendor's lien on the property and also set up the insolvency of the Glendon company, and obtained both the injunction and the appointment of a receiver.

Later the Bank of Gassaway, J. N. Elder, and Burk Elder recovered judgments against the Glendon company on which executions issued and were levied on some of its property, and that property was sold in parcels to Frame, Marple, Elder, McLaughlin, Given and Mollohan.

James F. Pierson and E. H. Pierson, suing in *assumpsit*, attached certain property of the Glendon company, and caused the same to be sold, and purchased it themselves at the sale.   In view of these proceedings, the Birch River company filed an amended and supplemental bill for injunctions against further proceedings

in said actions at law, for an accounting from Marple and Frame and Sergeant, constable, respecting the property sold under the executions.   This injunction was dissolved as to all of the property not included in the order on the original bill, appointing the receiver, and as to all property not purchased from the Birch River company and in so far as it inhibited the prosecution of the actions at law.   Later the amended and supplemental bill was dismissed.   These are the decrees passed upon in the former decision of this Court to which reference has been made.

A subsequent decree, entered September 28, 1909, authorized the special receiver to sell to the plaintiff, the Birch River Boom & Lumber Company, for the sum of $18,000.00, of which 40% was to be paid in hand and the residue in three equal annual installments with interest, "all the property and franchises. both real, personal and mixed, of whatever description, including the leasehold estates, the mills, booms, dams, splash dams, lumber, timber and logs, franchises and all property whatsoever of the Glendon Boom & Lumber Company," which sale seems to have been made and confirmed on said date.   A decree entered November 30, 1909, referred the cause to a commissioner to ascertain the liens and debts of the Glendon company, their amounts and priorities, to whom owing, the real estate of the defendant, with the liens thereon, stated in the order of their respective priorities, and the personal and other estate of the defendant, and to state the account of the special receiver, with the amount of property administered and the amount remaining unadministered, if any, and his disbursements in detail.   The commissioner, in his report, gave the Birch River company the first lien, D. C. Gallaher, special receiver, the second, one Cowl the third and all the other creditors were given the fourth place to share ratably.   There were three exceptions to this report, challenging the soundness of the preferences given.   The exception to the allowance of a preference to Cowl was sustained and the others overruled. Thereupon the court entered a decree ascertaining the amount due the Birch River company to be $18,355.31, and the debt due Gallaher, special receiver, to be $898.39, which sums it adjudged to be liens, in the order named, "on all the property and assets real and personal of the said defendant Glendon Boom & Lumber Company, which came into the hands of the receiver", or to which such receiver was entitled.   The same decree recom-

mitted the cause to a commissioner to ascertain and report what property and money had come into the hands of the receiver or should have done so and the disposition thereof made by the receiver. This appeal is from the decree of sale and the later decree determining questions of priority.

Whether the plaintiff has a vendor's lien upon the property sold mediately to the Glendon company, through Austin, Neib and Yarlett, is a basic question, as to most of the conflicting contentions. Subsidiary ones involve interpretation of the decrees and the relation of the appellants, E. H. Pierson, J. N. Elder, J. W. Given, J. R. Given and B. S. Given, to the cause and the property.

The receiver was authorized by the order appointing him to take charge of the property on which the vendor's lien was claimed only. By the order made on the amended and supplemental bill, April 26, 1909, he was ordered to take possession of the property of the Glendon Boom & Lumber Company and the logs in the river sold by the constable, and also the lumber sold by constable and not removed." This was the property purchased at execution sales by Frame, Marple, Elder, McLaughlin, Given and Mollohan, and, under the attachment sale, by James F. and E. H. Pierson. The injunction awarded against the purchasers, the constables and the execution and attachment creditors was dissolved, as to all the property except that first put into the possession of the receiver, and the amended and supplemental bill, on which the subsequent order extending the powers of the received stood, as well as the original bill, was dismissed, as to James F. Pierson, E. H. Pierson, J. N. Elder, Leslie Frame, R. A. Given, and James R. Sergeant, constable; but there was no express discharge of the receiver as to the property placed in his custody by the order made on the amended and supplemental bill, the property sold under execution and the attachment. Of course these decrees terminated his authority, if they became effective. The dissolution order was entered June 11, 1909, and suspended for 60 days for the purpose of an application for an appeal, but the appeal was not allowed until December 21, 1909, four months after the expiration of the stay. The appeal suspended the order and put the injunction back in force, but the record fails to show what became of the property in that four months period. Likely it went back into the possession of the purchasers. As to that the commissioner reports nothing, except the non-appearance

of the receiver before him.   The stay had expired when the sale by the receiver was authorized, made and confirmed, September 28, 1909, and also when the decree fixing the liens was entered, March 26, 1910.   The order of sale is equivocal as to what was sold.   After reciting the ability of the receiver to sell the property, "purchased from the plaintiff" for $18,000.00, it orders and confirms a sale of all the property, franchise, &c., of the Glendon Boom & Lumber Company.   Fixing the liens "on all the property and assets real and personal of the said defendant Glendon Boom & Lumber Company, which came into the hands of the receiver herein, or to which said receiver was or is entitled", the other decree is like unto it as regards certainty.   The judgments, executions and attachments relied upon in defense to the amended and supplemental bill were not proved before the commissioner. They may have been satisfied out of the property sold for that purpose and dismissed out of this suit, but this record does not show they were.   What became of them is mere matter of inference and conjecture.   Thus we are called upon to deal with a case resting largely in the personal knowledge of counsel and not disclosed by the record.

The decrees are presumptively correct, but the presumption is rebutted by inferences arising from the proceedings.   The terms of the decree of sale, read in the light of the suspension of the decree of dissolution by the order of the court below and the appeal and *supersedeas* allowed here, include all the property, but that sold under executions and the attachment may have been released by the receiver as a matter of fact.   Likewise the terms of the other decree are broad enough to include all of it.   That neither should have included it is placed beyond question by the decision on the former appeal, affirming the decree of dissolution, and the dismissal of the original and amended and supplemental bills as to that property and the claimants thereof.   On the face thereof, these decrees are, therefore, erroneous and must be reversed.

The deed reserving the vendor's lien was never recorded, but it is nevertheless good between the parties.   *Cole* v. *Smith,* 24 W. Va. 287.   It is also good as to everybody else except purchasers for value and without notice and lien creditors.   As to these two classes, it falls under the condemnation of sections 3 and 5 of chapter 74 of the Code.   The property involved seems to

be personal property, although the terms of some of the pleadings and decrees are broad enough to cover real estate. As described, however, the property is all personal. If not a statutory vendor's lien, because applicable to personal property, the reservation is in substance and effect an equitable mortgage, and falls within the scope of sec. 5 of chapter 74. The creditors protected by that statute are lien creditors, having right to charge the property directly by execution, attachment or otherwise, not holders of mere personal demands or claims. The section applies to both real and personal property. As applied to real estate, it protects only lien creditors. *Moore* v. *Tearney,* 62 W. Va. 72. It refers to both classes of property in the same terms, and there is no reason for according to it broader scope in its application to personal property than it has in the case of real estate. Owing to the mobility of personal property and the rapidity of its changes of ownership and possession, the reason or philosophy underlying the statute opposes extension rather than favors it, for it works restraint upon commerce, necessitating more frequent mutations of title and possession of personal property than of real estate on account of its nature and commercial requirements.

Recognition and enforcement of the vendor's lien were excepted to for want of proof. The deed is not in evidence, but there was oral proof of such a reservation therein as is claimed. The vendees seem to have carried the deed beyond the jurisdiction of the court and insufficiency of this as an excuse for its non-production is asserted. Austin, Neib and Yarlett, the immediate vendees, apparently promoters of the Glendon company, are non-residents and made no appearance, nor did the Glendon company, as to which the bill was taken for confessed. It, as well as Austin, Neib and Yarlett, is charged with insolvency and abandonment of the property. Search for the deed and other writings, relating to the alleged lien, fails to reveal them. They are neither in the possession of the plaintiff nor under its control. We think these circumstances justified the admission of secondary evidence of the contents of the deed.

According to the report of the commissioner, the appellants are mere general creditors. Nothing is reported in their favor except open accounts. As has already been stated, the record does not disclose what became of the judgments, proceedings on which were enjoined on the amended and supplemental bill. Hence, as:

to the debts reported by the commissioner and dealt with in the decree, the plaintiff's debt was properly allowed priority.

The priority accorded the lien of Gallaher, special receiver, is also complained of. His execution was issued January 2, 1909, and on January 28, 1909, the sheriff, proceeding under it, actually levied upon a large amount of the property of the Glendon Boom & Lumber Company. It was returnable to February Rules, 1909. After the return thereof, showing the levy, a writ of *venditioni exponas* was sued out on February 4, 1909, and placed in the hands of the sheriff. The receiver was appointed on February 26, 1909, before this last writ was executed, although after the property was advertised for sale under it. As to whether the excution was levied upon all of the property of the Glendon company, other than that subsequently levied on and sold to the appellants and others under executions and the attachment, we are unable to ascertain from the record. Gallaher filed an answer, claiming a lien under his *fieri facias* upon the property sold by Sergeant, Constable. His rights as to that property, if any he had, have been extinguished by the decree of July 21, 1909, dismissing the original and amended and supplemental bills as to the claimants by purchase under the sales made by the constables. But whether his excution was actually levied upon all other property of the Glendon company, the record does not disclose. He clearly has a lien by virtue of the levy of the execution upon the property upon which it was levied, for it was levied before the return day and proceedings to enforce the lien acquired by that levy were in process when the receiver took charge. It only remains to say whether he had a lien upon other leviable property of the execution debtor upon which no levy was made, other than that as to which the rights of the appellants have been adjudicated to be superior. As to such property, they are not purchasers for value and without notice. Their purpose is to charge it as general creditors of the Glendon Company. If they were such purchasers, the terms of the statute would protect them, the execution not having been docketed. It was a lien upon all the leviable property as against everybody except purchasers for value and without notice from the date of the issuance thereof, though not actually levied. *Huling &c. Co.* v. *Cabell*, 9 W. Va. 522; *Swann* v. *Summers*, 19 W. Va. 115; *Wyant* v. *Hayes*, 38 W. Va. 681. The provisions of chapter 140 of the

Code do not give that lien nor would they continue it beyond the return day, but section 2 of chapter 141 of the Code gives the *fieri facias* additional force, making it a lien from the time it is delivered to the sheriff or other officer upon all the personal estate of which the judgment debtor is possessed, or to which he was entitled and upon all which he may acquire on or before the return day thereof, with certain exceptions, and then says "and as to all property upon which a lien is hereby given, the said lien shall continue after the return day of the execution." This broad provision is then qualified so as to protect purchasers for value and without notice, after the return day, by requiring the execution to be docketed. From the time of the docketing thereof, it makes the lien good as against such purchaser upon the property owned by the judgment debtor in the county at the time the execution was placed in the hands of the officer and acquired by him on or before the return day thereof. Hence, Gallaher has a lien upon not only the property actually levied upon, but upon all other leviable property the Glendon Boom & Lumber Company owned at the date of the delivery of the execution to the sheriff, and all it acquired thereafter and before the return day of the writ, notwithstanding the failure to docket his execution, passage of the return day and actual return of the writ. *Puryear* v. *Taylor,* 12 Grat. 410; *Charron* v. *Boswell,* 18 Grat. 216; *Evans* v. *Greenhow,* 15 Grat. 153.

For reasons already stated, the decrees of sale entered on September 28, 1909, and March 29, 1910, must be reversed and the cause remanded for further proceedings in accordance with principles and conclusions here stated, and the rules and principles governing courts of equity.

*Reversed and Remanded.*