# CHARLESTON.

DOOLEY et als. v. BOARD OF EDUCATION et als.

Submitted September 7, 1917.    Decided September 18, 1917.

1. SCHOOLS AND SCHOOL DISTRICTS—*Board of Education—Powers.*
   The board of education of a school district is a corporation created by statute with functions of a public nature expressly given, and no other. It can exercise only such power as is expressly conferred or fairly arises by necessary implication, and only in the mode prescribed or authorized by the statute. (p. 650).

2. SAME—*Disposition of School Property—Statute.*
   Such board of education, after determining that some of its property is no longer needed for school purposes, can dispose of such property only in the manner prescribed by § 10 of ch. 45 of the Code, that is to say, by selling the same at public auction to the highest bidder, after due notice of the time, terms and place of such sale. (p. 650).

3. SAME—*Board of Education—Disposition of Property—Injunction.*
   A tax payer of the district may enjoin a board of education from disposing of any of its property in a manner other than that provided by said section 10 of ch. 45 of the Code; and in case a conveyance has been made therefor may maintain a suit to enjoin the grantee in such conveyance from taking possession of said property, and to set aside such conveyance. (p. 651).

Appeal from Circuit Court of Kanawha County.

Suit for injunction by W. R. Dooley and others against the Board of Education of Cabin Creek District and A. C. Lawrence, with cross-bill by defendant Lawrence. Decree for plaintiffs against defendant Lawrence denying the relief sought by his cross-bill, and he appeals.

*Affirmed.*

*Cato & Bledsoe* and *M. F. Stiles,* for appellants.

*Price, Smith, Spilman & Clay,* for appellees.

RITZ, JUDGE:

The defendant board of education after consideration decided to abandon two district schools located respectively at Miami and Ronda, and to construct a consolidated graded

school in lieu thereof at Sharon, a village between Miami and Ronda. The board owned a lot at Miami containing one-half acre. It selected a site at Sharon for its graded school containing about two acres. It appears that a man by the name of Kittenger had a contract to purchase this two-acre site, which was afterward turned over to the defendant A. C. Lawrence. The half acre lot owned by the board at Miami is surrounded by lands of the Shonk Land Company, and is presumed to be underlaid with mineral oil or gas. Such negotiations were had between the board and the defendant A. C. Lawrence that he agreed to transfer to the board the two-acre lot at Sharon, for which he had paid five hundred and twenty-five dollars, and pay the board five hundred dollars in cash, for the consideration that the board would transfer to him in exchange its lot at Miami. A deed was executed by Lawrence conveying the two-acre lot to the board, and the board executed a deed conveying the half-acre lot to Lawrence. This suit was then instituted by tax payers to enjoin Lawrence from taking possession of the school house lot at Miami, and to cancel the deed made by the board of education to Lawrence, upon the ground that the board had not complied with the provisions of law permitting it to make disposition of abandoned property; and further, because the transaction between the board of education and said Lawrence was a fraud upon the tax payers of said district, in that the transaction was a secret one between the board and Lawrence, and resulted in Lawrence getting the Miami property valued at from five to ten thousand dollars for a consideration of one thousand and twenty-five dollars. The board of education and Lawrence both answered the bill contending that the transaction was in accordance with law, and that there was no fraud therein; that the Sharon lot purchased by Lawrence at five hundred and twenty-five dollars, and the additional sum of five hundred dollars in cash, was an adequate and full consideration for the Miami lot. The court below enjoined the defendant Lawrence from taking possession of the lot, and on motion refused to dissolve the injunction, and from that decree an appeal was prosecuted to this court. Subsequently the defendant Lawrence filed a

cross bill in the cause alleging that the Shonk Land Company owned the land surrounding this half-acre lot at Miami, and was preparing to drill wells for oil and gas in close proximity thereto so as to drain any oil or gas which might be thereunder, and praying for the appointment of a receiver to drill for the oil and gas upon said lot pending the determination of this litigation. The relief prayed for was refused by the lower court and Lawrence appealed to this court from that decree.

The board of education of a school district is a corporation created by statute with functions of a public nature expressly given and no other. It can exercise no power not expressly conferred or fairly arising by necessary implication, and in no other mode than that prescribed or authorized by the statute. *Shinn* v. *Board of Education,* 39 W. Va. 497; *Honaker* v. *Board of Education,* 42 W. Va. 170.

Section 10 of chapter 45 of the Code provides: "The president of the board of education of every district and independent district shall at least once a year, examine all the school houses now constructed or in process of construction and all school sites in the district and report the condition of the same to the board of education; and such as are in the judgment of the board, properly located and are suitable or can with reasonable expense be rendered so, shall be retained, and the remainder with the consent of the county superintendent, as to districts, shall be sold at public auction to the highest responsible bidder, by the board of education on proper legal notice and on such terms of sale as the board may order, and the proceeds shall be added to the building fund."

The appellants rely on sections 8, 11 and 13 as conferring authority upon the board to acquire and sell land. It is true, these sections confer broad authority upon boards of education in the matter of acquisition and disposition of property, but nowhere do they undertake to define the procedure which must be had in order that the board may legally divest itself of title to property. This procedure is defined by section 10 above quoted. This section, prescribing the procedure to be followed by the board of education in disposing of property

not needed by it for its corporate purposes, was, prior to the
amendment of 1908, contained in section 33 of chapter 45
of the Code. The law then gave the board of education au-
thority to dispose of such real estate at public auction or
otherwise. The legislature, however, by the amendment of
1908 struck out the words, "or otherwise," thus taking away
the power of the board of education to sell such property
otherwise than at public auction. The fact that the legisla-
ture has in such detail prescribed the method of disposing
of this sort of property, and the further fact that a clear
legislative intent was shown by the amendment of 1908 to
further limit the authority of boards of education in this
regard, convince us that it was the legislative purpose that
this statute should be substantially complied with in order
to a valid sale or disposition of school property. It is a
declaration of public policy in that regard, and if we need
evidence of the wisdom of such a declaration the present suit
would afford it. The acts of public officers, however free
from fraud they may be, are too frequently called in ques-
tion by the public.

> "As it was in the beginning,
> Is today official sinning,
> And shall be forever more,"

seems to be a belief firmly grounded in the minds of at least
a large part of our citizenship. The legislature in passing
this act no doubt had in view the tendency to criticise the acts
of public officers, and in prescribing this means of disposing
of public property intended to remove from such acts even
the opportunity for corruption.

In this case affidavits are filed showing that the property
sought to be transferred to Lawrence is worth from four to
ten thousand dollars, and one affidavit is filed showing that
the property is worth more than fifteen hundred dollars,
excluding from consideration the probability that it is under-
laid with oil or gas. These affidavits are not met by proof,
but even assuming that they were, a controversy necessarily
arises as to whether or not the board of education has been
defrauded in this transaction. Many of the tax payers will
always believe that it has, and will assign to the officers

charged with the execution of the law corrupt and improper motives. If the property is disposed of at a public sale after notice of the time and place thereof, the parties desiring to purchase it will have opportunity to bid thereon, and no question can be raised as to the correctness of the acts of the board of education. There would not be even a fanciful basis for charges of fraud and corruption against the public officers. It is desirable, in a government like ours, that the people have the utmost confidence in those charged with the administration of the law, and every act of the legislature which has for its purpose the maintenance of that confidence, or the removal of causes for suspicion of official acts, should be given effect, to the end that the fullest faith may be reposed in the acts of those charged with the administration of the law.

It follows from what we have said that the transactions between Lawrence and the board of education were in violation of law and are void, and the deed made in pursuance thereof is void and of no effect.

The decree of the lower court appealed from refusing to appoint a receiver upon the application of said Lawrence is correct for the reason, if for no other, that said Lawrence having no interest in the property, the subject-matter of the suit, the court will not entertain a bill by him for the appointment of a receiver.

It is asserted by the defendants that the plaintiffs are not prosecuting this suit in good faith, but are allowing themselves to be used by the Shonk Land Company in its endeavor to secure this Miami lot. It is not necessary for us to inquire whether or not this would be a good defense to the bill, in as much as the charges are unsupported, and the proof on behalf of the plaintiffs shows conclusively that they are suing for the vindication of their rights as tax payers and citizens of the district.

The decrees complained of will be affirmed.

*Affirmed.*