365 S.E.2d 51

## CITY OF BLUEFIELD, West Virginia, A Municipal Corporation

v.

## Ted TAYLOR, et al., Board of Education of the County of Mercer.

### No. 17010.

Supreme Court of Appeals of West Virginia.

July 17, 1987.

---

John Feuchtenberger, Bluefield, for appellant.

Michael Lilly, Princeton, for Ted Taylor.

Kathryn R. Bayless, Bayless & Wills, Princeton, for Mercer Co. Bd. of Ed.

PER CURIAM:

This case is before this Court upon the appeal of the Mercer County Board of Education ("the Board"). It arises from an order entered by the Circuit Court of Mercer County which set aside deeds reflecting

a sale of school property from the Board to A.B. Johnson and a subsequent sale of that same property from A.B. Johnson to Ted Taylor. This Court has before it the petition for appeal, all matters of record and briefs.

The appellant in this case is the Mercer County Board of Education, the party which initially sold the school property in question, and Ted Taylor, the ultimate purchaser of the property. The appellee is the City of Bluefield.

## I

This case arises from the sale of school property known as Central Junior High School located in Bluefield, West Virginia. This property was declared to be surplus property by the Mercer County Board of Education, and the Board ultimately ordered the property to be sold at public auction.

After public advertisement of the sale of the surplus property, A.B. Johnson bid and paid $2500 for the property.[1] The appraised value was a nominal value of $500. The Board subsequently approved the sale to Mr. Johnson.

A deed conveying the property from the Board to A.B. Johnson was recorded in the office of the Clerk of the County Commission of Mercer County. On that same day, Mr. Johnson sold the property to Ted Taylor, an appellant herein. Subsequently, a deed reflecting a conveyance of the property from Johnson to Taylor was recorded in the clerk's office. The record contains no evidence of bad faith on the part of the Board regarding either of these conveyances.

Thereafter, the City sought an injunction setting aside the sales of the property in question by the Board to Johnson and by Johnson to Taylor, for the Board to discharge its duties to secure the building to protect against vandalism, and to restrain Johnson and Taylor from removing any property from the building or from demolishing the building.

The trial court granted a preliminary injunction enjoining Johnson and Taylor from conveying any interest they might have in the property and from taking any action to demolish or damage the surplus property. The trial court later granted a permanent injunction with the same constraints relating to entry and demolition. The court also set aside the deed reflecting the sale of the surplus property by the Board to A.B. Johnson, as well as the deed reflecting the subsequent sale by A.B. Johnson to Ted Taylor.

## II

The primary issue before us is whether the trial court erred in setting aside the deeds reflecting the sale of the property from the Board to Johnson and the subsequent sale of that same property from Johnson to Taylor. We conclude that the trial court erred under the facts of this case in setting aside the deeds.

The appellant contends that the City failed to pursue an adequate remedy at law before seeking equitable relief. This failure on the City's part, the appellant asserts, should have precluded the trial court's award of injunctive relief.[2]

---

1. The surplus property had been publicly advertised for sale on two previous occasions. No bidders appeared at the auction after the first advertisement. After the second advertisement, a proposal to demolish the building and remove the resulting debris for $68,000 was rejected by the Board.

2. " 'Injunctive relief, like other equitable or extraordinary relief, is inappropriate when there is an adequate remedy at law.' *Hechler v. Casey,* 175 W.Va. 434, 440, 333 S.E.2d 799, 805 (1985), and the cases cited therein." *Perdue v. Ferguson,* 177 W.Va. 44, 50, 350 S.E.2d 555, 561 (1986). "Equity does not have jurisdiction of a case in which the plaintiff has a full, complete and adequate remedy at law, unless some peculiar feature of the case comes within the province of a court of equity." Syl. pt. 3, *Severt v. Beckley Coals, Inc.,* 153 W.Va. 600, 170 S.E.2d 577 (1969); *accord Perdue v. Ferguson, supra;* syl. pt. 1, *Truby v. Broadwater,* 175 W.Va. 270, 332 S.E.2d 284 (1985).

In the case before us, pursuant to *W.Va.Code,* 8–12–5(23) [1983], and *W.Va.Code,* 8–12–16 [1969], the City of Bluefield enacted an ordinance which provided that a building could be declared a nuisance by the City. Bluefield, W.Va., Code § 4–60 (1958). The City also has the authority to require an owner to repair or

In syllabus point 1 of *Dooley v. Board of Education*, 80 W.Va. 648, 93 S.E. 766 (1917), this Court determined that:

> The board of education of a [county] is a corporation created by statute with functions of a public nature expressly given, and no other. It can exercise only such power as is expressly conferred or fairly arises by necessary implication, and only in the mode prescribed or authorized by the statute.

*See also* syl. pt. 2, *Herald v. Board of Education*, 65 W.Va. 765, 65 S.E. 102 (1909).

The Board's power to sell or otherwise dispose of school property is derived from *W. Va. Code*, 18-5-7 [1986], which provides in pertinent part:

> If at any time the board shall ascertain that any building or any land no longer shall be needed for school purposes, the board may sell, dismantle, remove or relocate any such buildings and sell the land on which they are located, at public auction, after proper notice, and on such terms as it orders, to the highest responsible bidder....

This Court had the opportunity to construe this statute in *Dooley v. Board of Education*, 80 W.Va. 648, 93 S.E. 766 (1917). In *Dooley*, the board of education had decided to abandon two schools in the district and to construct a consolidated school replacing the two. Subsequently, district taxpayers sought to cancel the deed between the board of education and the grantee on the ground that the board had failed to comply with the provisions of law permitting it to dispose of abandoned property and because the transaction between the board of education and the grantee was a fraud upon taxpayers due to the fact that the transaction was a secret one. Furthermore, the property was sold for significantly less than its appraised value. The trial court enjoined the grantee from taking possession of the land conveyed to him by the board and on motion refused to dissolve the injunction. In upholding the trial court's decision, this Court held that:

> [A] board of education, after determining that some of its property is no longer needed for school purposes, can dispose of such property only in the manner prescribed by [*W. Va. Code*, 18-5-7, as amended],[3] that is to say, by selling the same at public auction to the highest [responsible] bidder, after due notice of the time, terms and place of such sale.

Syl. pt. 2, *Dooley v. Board of Education*, 80 W.Va. 648, 93 S.E. 766 (1917).

Except for the argument that Johnson was not a responsible bidder, no other provision of *W. Va. Code*, 18-5-7 [1986] is in controversy because the Board complied with the statute.

Furthermore, the trial court's finding that neither A.B. Johnson nor Ted Taylor were responsible bidders is not of paramount concern under the facts of this case. The focus on whether Taylor was a responsible bidder at all was misplaced because there is no evidence in the record that he attempted to bid for the surplus property. Taylor was, rather, a *bona fide* purchaser of the surplus property from Johnson.

In addition to the question of the Board's compliance with *W. Va. Code*, 18-5-7 [1986], it should be noted that both Johnson and Taylor timely recorded deeds reflecting these conveyances with the Clerk of the County Commission of Mercer County pursuant to *W. Va. Code*, 40-1-9 [1963].[4]

---

demolish a building; however, if owner compliance is not forthcoming, the City may perform the necessary work, assess costs to the owner and place a lien against the property. Bluefield, W.Va., Code § 4-64(a) and (b) (1958) and Bluefield, W.Va., Code § 4-65 (1958), respectively. The City opted not to follow this course because of the alleged financial inability of the bidder. The record, however, was not developed on that question.

3. The subsequent amendments to *W. Va. Code*, 18-5-7 [1986] do not alter the Court's interpretation of this statute in *Dooley* insofar as it applies to the case now before us.

4. The text of *W. Va. Code*, 40-1-9 [1963] provides:

> [E]very deed conveying any such estate or term, and every deed of gift, or trust deed or mortgage, conveying real estate shall be void, as to creditors, and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record in the county wherein the prop-

A deed conveying real estate is void as against creditors and purchasers until and except from the time it is duly admitted to record. *W.Va.Code*, 40–1–9 [1963]; 15 M.J. *Recording Acts*, § 4 (1979 Replacement Vol.); *see also Delaplain & Son v. Wilkinson & Co.*, 17 W.Va. 242, 261–62 (1880); *Pack v. Hansbarger*, 17 W.Va. 313, 322 (1880).

■ "The purpose of [*W.Va.Code*, 40–1–9 [1963]] is to protect a *bona fide* purchaser of land against creditors of the grantor, and against other persons to whom the grantor might have undertaken to execute title papers pertaining to the land embraced in the recorded instrument." *Bank of Marlinton v. McLaughlin*, 121 W.Va. 41, 44, 1 S.E.2d 251, 253 (1939). That statute should be read in *pari materia* with *W.Va.Code*, 40–1A–4(a) [1986], which defines fraudulent transfers as to both present and future creditors.[5]

The word "creditors" as embodied in *W.Va.Code*, 40–1–9 [1868, 1963], has been construed by this Court to mean all creditors who but for the deed or contract would have a right to subject the land embraced in the deed to the payment of their debts. *Snyder v. Martin*, 17 W.Va. 276, 288 (1880). In *Moore v. Tearney*, 62 W.Va. 72, 57 S.E. 263 (1907), this Court further qualified the class of creditors intended to be protected by this section. In *Moore*, the Court determined that the statutory protection afforded by this section extended to creditors who have affected a lien on the conveying debtor's property before recordation of the conveyance, rather than general creditors. 62 W.Va. at 75, 57 S.E. at 264. *See also Birch River Boom & Lumber Co. v. Glendon Boom & Lumber Co.*, 71 W.Va. 507, 512, 76 S.E. 972, 974–75

(1912); 15 M.J. *Recording Acts*, § 9 (1979 Replacement Vol.).

■ A.B. Johnson, the initial purchaser of the property in the case before us, purchased the surplus property for valuable consideration, without notice, and, under the facts of this case, the City's claim to the property should not take precedence because Johnson recorded the deed to such property pursuant to the recording statute, *W.Va.Code*, 40–1–9 [1963]. Ted Taylor, a subsequent purchaser for valuable consideration of the same property, is further insulated from having his deed set aside when he complied with the statute by recording his deed.

■ Furthermore, in the absence of any fraud, where there is no contention by the grantor or grantee that a deed should be set aside, a third party who is, in essence, a stranger to the transaction, cannot make such a contention. *See, e.g., Sailer v. Mercer County*, 75 N.D. 123, 129, 26 N.W.2d 137, 139 (1947). In addition, unqualified attempts to restrain a grantee from alienating real property he or she has acquired are looked upon with disfavor. 5A R. Powell and P. Rohan, *The Law of Real Property* § 840 at 77–7 (rev. ed. 1987). *See, e.g., Cobb v. Moore*, 90 W.Va. 63, 65, 110 S.E. 468, 469 (1922). The logic behind those general principles could be applied to the facts in the case now before us. A successful challenge to Johnson's deed would, in turn, destroy Taylor's claim. As A.B. Johnson's grantee, Ted Taylor, a subsequent *bona fide* purchaser for valuable consideration, is undoubtedly insulated from the City's challenge to his deed.

---

erty embraced in such contract, deed, trust deed or mortgage may be.

5. The text of *W.Va.Code*, 40–1A–4(a) [1986] provides:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) With actual intent to hinder, delay or defraud any creditor of the debtor; or

(2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor:

(i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(ii) Intended to incur, or believed or reasonably should have believed that he (or she) would incur, debts beyond his (or her) ability to pay as they became due.

For the foregoing reasons, the judgment of the Circuit Court of Mercer County is reversed.

Reversed.