## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Gary D. Hoke and Barbara M. Hoke,**
**Defendants below, Petitioners**

**vs)  No. 15-0972** (Monroe County 14-C-26)

**The Board of Education of the County of Monroe,**
**Plaintiff below, Respondent**

**FILED**

**January 26, 2017**

**released at 3:00 p.m.**
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The petitioners, Gary D. and Barbara M. Hoke, by counsel Barry L. Bruce, appeal the August 28, 2015, order of the Circuit Court of Monroe County granting summary judgment in favor of the respondent, The Board of Education of the County of Monroe (hereinafter "the board").  The board, by counsel Justin R. St. Clair, argues in support of the circuit court's order.

After carefully considering the parties' written and oral arguments, as well as the record on appeal and the applicable law, this Court finds no substantial question of law and no prejudicial error.  For these reasons, a memorandum decision affirming the circuit court's summary judgment order is appropriate under Rule 21 of the Rules of Appellate Procedure.

### I.  Factual and Procedural History

On May 4, 2011, the board purported to sell an eight-tenths acre of real property, known as the Second Creek School property, to Mr. and Mrs. Hoke for $201.00 by private sale.  Subsequently, the board determined that pursuant to West Virginia Code § 18-5-7(a) (2016), the sale of this property should have been accomplished pursuant to a public auction rather than a private sale.[1]  The board offered to return the Hokes' purchase money and expenses so that a public auction could be held, but the Hokes declined.  As a result, the board filed the instant declaratory judgment action in the circuit court seeking a ruling that the 2011 deed to the Hokes was void and must be set aside.

After the Hokes filed their answer to the board's complaint, the board moved for summary judgment.  In response to that motion, the Hokes asserted they were *already* the

---

[1]The applicable statutes are quoted in Section III, *infra*.

1

owners of the Second Creek School property even without the 2011 deed. They asserted ownership through their predecessor-in-interest based upon a 1940 deed and a 1983 lease.

In its order granting summary judgment in favor of the board, the circuit court ruled that the 2011 deed to the Hokes was invalid because the sale did not comply with the statutory public auction requirement. Furthermore, the court found no outstanding genuine issue of material fact, and no merit, to the Hokes' alternate claim of ownership. Because no party could produce a valid deed of conveyance for the Second Creek School property, the circuit court concluded that the board held title to the property by operation of the "undisputed possession statute," West Virginia Code § 18-5-6 (2016).

## II.  Standard of Review

The Hokes appeal the circuit court's summary judgment order in this declaratory judgment action. We apply a plenary standard of review to such matters. *See* Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*."); Syl. Pt. 3, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995) ("A circuit court's entry of a declaratory judgment is reviewed *de novo*."). We are mindful that pursuant to Rule 56 of the West Virginia Rules of Civil Procedure, "summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *Painter*, 192 W.Va. at 190, 451 S.E.2d at 756, syl. pt. 2, in part (citations omitted).

## III.  Discussion

### A.  Validity of 2011 Deed

The board filed this action to set aside the 2011 deed because the private sale to the Hokes did not meet the requirements of West Virginia Code § 18-5-7(a). This statute provides that unneeded county board of education property is to be sold to the highest responsible bidder at a public auction:

> (a) Except as set forth in subsection (b) of this section, if at any time a county board determines that any building or any land is no longer needed for school purposes, the county board may sell, dismantle, remove or relocate the building and sell the land on which it is located at public auction, after proper notice and on such terms as it orders, to the highest responsible bidder.

*Id.*[2]  This Court has held that a county board of education has only the powers granted to it by statute and, accordingly, a deed made in violation of a statutory public auction requirement is void and of no effect. *Dooley v. Bd. of Educ. of Cabin Creek Dist.*, 80 W.Va. 648, 93 S.E. 766 (1917); *accord City of Bluefield v. Taylor*, 179 W.Va. 6, 9, 365 S.E.2d 51, 54 (1987) (reaffirming *Dooley* holding*).* Relying on this authority, the circuit court set aside the board's 2011 deed to the Hokes. On appeal, the Hokes do not challenge the circuit court's application of West Virginia Code § 18-5-7(a) and *Dooley.* After carefully reviewing the law and the record evidence, we find no error in the circuit court's ruling setting aside the 2011 deed.

## B. 1940 Hogshead-Reed Deed

The Hokes' appellate briefs address their other grounds for asserting ownership of the Second Creek School property. Their claim is primarily based upon a July 1, 1940, deed whereby J.E. Hogshead conveyed two large, adjoining tracts of land in Monroe County to Aubrey F. Reed. The Hokes explain that they are the assigns of Aubrey F. Reed.[3] The Second Creek School property is situate within the boundaries of the tracts conveyed in the 1940 deed. However, the 1940 deed expressly reserved and excepted the Second Creek School property, along with six other parcels, from the conveyance:

> There is excepted and not conveyed by this deed the following lots, tracts or parcels of land  heretofore sold and conveyed by the party of the first part as follows . . .

> FIFTH:  That certain lot or parcel of land conveyed, by the party of the first part to the Board of Education of Monroe County, by deed bearing date the ___ day _____, 19 __, and not yet of record and containing Eight Tenths (8/10) of an acre and bounded and described as follows:

> Beginning at a gum near the branch N 15 E 206 ft. to a fence post by a driveway and with the same S 65-1/2 E 160 ft. to a point in the middle of the draft road and with the same S 8-1/2 W 191 ft. to a point near the left hand side of the same and leaving the road N 81-1/2 W 137 ft. to a stake on the band of the above named branch and with the same N 47 W 50 ft. to the beginning.

---

[2]The exception to the auction requirement set forth in West Virginia Code § 18-5-7(b) does not apply in this case. *See* footnote seven, *infra*.

[3]The appendix record reflects that in 1990, the Hokes purchased from Mr. Reed's estate the real property that Mr. Reed had obtained from Mr. Hogshead in 1940.

The Hokes argue that this reservation failed because it was not expressed in certain and definite language. "'In order to create an exception or reservation in a deed which would reduce a grant in a conveyance clause which is clear, correct and conventional, such exception or reservation must be expressed in certain and definite language.' Syl. Pt. 2, *Hall v. Hartley*, 146 W.Va. 328, 119 S.E.2d 759 (1961)." Syl. Pt. 4, *Cottrill v. Ranson*, 200 W.Va. 691, 490 S.E.2d 778 (1997). To support their claim of uncertainty, the Hokes note that the date of the purported separate deed to the board was left blank in the 1940 Hogshead-Reed deed. Moreover, no separate deed from Mr. Hogshead conveying the Second Creek School property to the board was ever recorded with the Clerk of the Monroe County Commission, and no such deed can be located. The Hokes argue that Mr. Hogshead transferred his property to Mr. Reed using the boundary descriptions of the two tracts, and if the reservation failed due to uncertainty, then the school property would necessarily have been included within the conveyance to Mr. Reed. Accordingly, the Hokes contend that, as the assigns of Mr. Reed, they are the owners of the Second Creek School property.

The circuit court found no merit to the Hokes' argument, and we agree. The Hogshead-Reed deed very clearly and unambiguously excluded the Second Creek School property from the conveyance to Mr. Reed. The deed expressly directed that "excepted and not conveyed by this deed" was the land situate at the specific property description of the school property. The absence of a date for the separate conveyance to the board did not render this reservation ambiguous. Moreover, by using the past tense language "heretofore sold and conveyed," it appears the property had *already* been transferred to the board–thus it could not have been Mr. Hogshead's intention to convey it to Mr. Reed. When the parties to a written instrument have expressed their intent in plain and unambiguous language, the instrument is not subject to judicial construction or interpretation but will be enforced according to the intent so expressed. *See* Syl. Pt. 4, *Faith United Methodist Church and Cemetary of Terra Alta v. Morgan*, 231 W.Va. 423, 745 S.E.2d 461 (2013).

For purposes of this case, it is immaterial that no deed from Mr. Hogshead to the board was ever recorded. Recording is not a pre-requisite to the validity of a deed. *See Jones v. Wolfe*, 203 W.Va. 613, 615, 509 S.E.2d 894, 896 (1998) ("The law in this State is rather clear that a deed takes effect from its actual or constructive delivery. . . . Recording of the deed is not critical") (citations omitted). Although West Virginia Code § 40-1-9 (2014 & 2016 Supp.)[4] protects a subsequent *bona fide* purchaser without knowledge when a deed

---

[4]West Virginia Code § 40-1-9 provides:

      Every such contract, every deed conveying any such estate or term, and every deed of gift, or deed of trust or memorandum of deed of trust pursuant

for a prior transfer was never recorded, this statute has no applicability here. The reservation provision in the Hogshead-Reed deed clearly and unambiguously provided Mr. Reed with written notice of the conveyance to the board.

Furthermore, even assuming, *arguendo*, that Mr. Hogshead did not properly deliver a deed for the Second Creek School property to the board, ownership of this property was not vested in Mr. Reed. Rather, if the school property was not legally deeded to the board, the clear and unambiguous reservation in the 1940 Hogshead-Reed deed would result in it being retained by Mr. Hogshead. As the circuit court correctly ruled, Mr. Reed never had any interest in the school property. As such, the Hokes cannot, as a matter of law, establish ownership through the 1940 deed.

## C. 1983 Lease to Monroe County Commission

The Hokes also assert a reversionary interest in the Second Creek School property through a June 14, 1983, lease. By 1983, the board was no longer using the Second Creek School property as a school. For a yearly payment of one dollar, the Monroe County Commission (hereinafter "the commission") agreed to lease the school property for use as a polling place or for some other public purpose.[5]

The 1983 lease purports to be by and between the board, the commission, and Aubrey F. Reed. The lease recites that the 1940 Hogshead-Reed deed conveyed two tracts of land to Mr. Reed, and that the school property was excepted from the conveyance. However, despite quoting the 1940 deed's reservation provision, it appears the parties to the lease assumed the Second Creek School property *was* conveyed to Mr. Reed by that deed.[6] The

---

> to section two, article one, chapter thirty-eight of this code, or mortgage, conveying real estate shall be void, as to creditors, and subsequent purchasers for valuable consideration *without notice*, until and except from the time that it is duly admitted to record in the county wherein the property embraced in such contract, deed, deed of trust or memorandum of deed of trust or mortgage may be.

(Emphasis added).

[5]The commission was not made a party in this case.

[6]The parties to the 1983 lease may have been under the same misunderstanding asserted by the Hokes herein, i.e., the incorrect belief that the reservation provision in the 1940 deed failed for uncertainty.

lease further provides that when the Second Creek School property is no longer used for a public purpose, it will "be returned" to Mr. Reed, or his heirs or assigns. It is undisputed that, at present, the property is not being used by the commission as a polling place or for any public purpose, so the Hokes assert that it reverts to them as Mr. Reed's assigns.

The circuit court did not expressly address the 1983 lease in its summary judgment order. Nonetheless, in our plenary review of the uncontested record evidence, we can readily dispose of this issue. The basis for the reversionary provision in the lease is the same basis underlying the Hokes' other argument: the claim that Mr. Reed obtained ownership of the Second Creek School property through uncertainty in the 1940 deed. As we have already concluded, this claim lacks merit. The plain and unambiguous reservation in the 1940 deed removed the Second Creek School property from the conveyance to Mr. Reed.

The language in the 1983 lease could not grant Mr. Reed, or his heirs and assigns, an ownership interest that they did not already possess. First, it was an annual lease, not a document transferring permanent legal ownership to either the commission or Mr. Reed. Second, a county board of education may not convey an ownership interest in real property to a private party without meeting the requirements of West Virginia Code § 18-5-7. In other words, to bestow ownership on Mr. Reed, the board would have needed to sell the property to him at a public auction. *See* W.Va. Code § 18-5-7(a); *Dolley,* 80 W.Va. 648, 93 S.E. 766.[7] Accordingly, the 1983 lease is of no assistance to the Hokes' claims.

## D. Current ownership of Second Creek School property

Upon determining that the Hokes could not establish ownership of the Second Creek School property through their predecessor-in-interest Mr. Reed, and because no deed from

---

[7]There is a limited exception to the auction requirement in West Virginia Code § 18-5-7(b) allowing the original grantor of property, or the grantor's heirs or assigns, to repurchase property at the same price for which it was originally sold to a board of education. This exception only applies to property in rural communities that was not originally sold to a board of education in a voluntary arms length transaction for consideration approximating fair market value. *Id.* The Hokes suggest that West Virginia Code § 18-5-7(b) has some application to this case. We reject this assertion because Mr. Reed was never the grantor of the Second Creek School property to the board. Moreover, there is no evidence regarding how much the board may have paid for this property when it was originally obtained, so there is no way to determine whether the sale was a voluntary arms length transaction approximating fair market value.

Mr. Hogshead to the board–or to anyone else–was produced for this property, the circuit court turned to the "undisputed possession statute," West Virginia Code § 18-5-6:

> The county board [of education] shall have title to any land or school site which for five years has been in the undisputed possession of the county board or any board of education of a magisterial district, or subdistrict, or independent district, and to which title cannot be shown by any other claimant. Such land shall be held and used for school purposes, as provided by section eight of this article.

The parties acknowledge that the board possessed the Second Creek School property, and used this property as a public school, for many decades. Given the absence of a recorded deed conveying the school property to anyone, and because no claimant has shown title to the property, the circuit court concluded as a matter of law that title to the Second Creek School property is vested in the board by operation of West Virginia Code § 18-5-6. After reviewing the appendix record and the parties' arguments, we agree with the circuit court's conclusion. If the commission no longer desires to lease this property, and the board intends to dispose of the property, then the board must abide by the requirements of West Virginia Code § 18-5-7.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** January 26, 2016

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

7